IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>v.<br><br>KEVEN L. WYRICK,<br><br>                    Defendant. | Case No. 94-00194-12-CR-W-GAF |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S RENEWED MOTION TO REDUCE SENTENCE
PURSUANT 18 U.S.C. §3582(c)(1)(A)(i) – COMPASSIONATE RELEASE**

The United States of America, through Teresa A. Moore, Acting United States Attorney for the Western District of Missouri, and the undersigned attorney, provides the following response in opposition to defendant's motion for compassionate release. The defendant seeks to have his life sentence for conspiracy to distribute marijuana and a continuing criminal enterprise resulting in death reduced to time served based upon extraordinary and compelling reasons. The defendant argues extraordinary and compelling reasons exist because the coronavirus (COVID-19) places him at risk if the defendant remains in the custody of the Bureau of Prisons (BOP). (D.E. 1092.) Because the defendant remains a danger to the community, the Government opposes the request and asks the Court to deny the defendant's motion.

### I. Procedural History

On May 25, 1995, defendant was charged with one count of conspiracy to distribute marijuana, one count of engaging in a continuing criminal enterprise resulting in death and one count of conspiracy to distribute marijuana resulting in death. On September 24, 1996, trial began and ended on November 1, 1996 where defendant was convicted of counts two and three. On May

22, 1997, defendant was sentenced to life imprisonment. Based on the information made available on the Bureau of Prisons Inmate Locator, the defendant does not have a release date. (*See* https://www.bop.gov/inmateloc/.)

On August 31, 2020, the defendant filed a motion for compassionate release and asserts that the current situation regarding the coronavirus (COVID-19) places the defendant at risk if he remains in custody. (D.E. 1092.) On September 29, 2020 the government filed its opposition to said motion. (D.E.1098.)

On October 21, 2020 this Court entered an Order denying defendant's initial motion for compassionate release. (D.E.1102.)

Defendant Wyrick appealed the denial and a mandate was issued after a judgement was filed affirming the district court order. (D.E. 1109.)

Defendant Wyrick then filed this renewed motion for compassionate release (D.E. 1110.)

## II. First Step Act

The First Step Act, effective December 21, 2018, provides inmates the ability to file a motion for compassionate release, an ability previously only vested in the BOP. The statute, 18 U.S.C. § 3582(c)(1)(A), originally permitted judicial relief only upon a motion by the Director of the BOP. Section 603(b) of the First Step Act now permits courts to act "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."

Under 18 U.S.C. § 3582(c) a court may not modify a term of imprisonment once it has been imposed except that, under subsection § 3582(c)(1)(A), a court may reduce a term of imprisonment upon finding "extraordinary and compelling reasons," if such reduction is consistent with applicable policy statements of the Sentencing Commission, after considering the factors set forth in 18 U.S.C. § 3553(a), and after determining the defendant is not a danger to the community as provided in 18 U.S.C. § 3142(g). (U.S.S.G. § 1B1.13(2).) The pertinent policy statement, U.S.S.G. § 1B1.13, defines specific medical, age, and family circumstances as possibly justifying a sentencing reduction under this statute, and further authorizes a sentencing reduction based on an extraordinary and compelling circumstance identified by the BOP. (§1B1.13 Commentary n.1(D).)

The Government acknowledges that Courts are divided on the applicability of U.S.S.G. §1B1.13 when a motion for compassionate release is brought directly by an inmate under the First Step Act, rather than a motion by the Director of the BOP. This division is, at least in part, because the text of § 1B1.13 is tailored to motions specifically brought by the BOP, and the Guideline has not been updated or revised since 18 U.S.C. § 3582(c) was amended to allow inmates to bring motions on their own behalf. Compare *United States v. Warren*, 456 F.Supp.3d 1083, 1084-86 (D. Minn. Jan. 1, 2020), with *United States v. Jones*, 2020 WL 6817488, at *6-9 (6th Cir. Nov. 20, 2020) ("We now join the majority of district courts and the Second Circuit in holding that the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release.") (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020). *See also United States v. Gunn*, 2020 WL 6813995, at *1-2 (7th Cir. Nov. 20, 2020).

The Eighth Circuit has not yet decided this issue. *See United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in § 1B1.13."). However, while it remains undecided within the Eighth Circuit whether § 1B1.13 applies to motions for compassionate release brought directly by an inmate, and therefore whether Courts consider whether the defendant remains a danger to the community, § 3582 still requires the Court to consider the § 3553(a) factors, one of which is "to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C). Further, the Government submits even if not found to be applicable, § 1B1.13 is at the very least instructive on the pertinent issues of a motion for compassionate release. *See United States v. Pelichet*, 2020 WL 6825699, at *5 (D.S.D. Nov. 20, 2020) ("With the understanding that it is not limited by Guideline § 1B1.13, the Court will look to the Sentencing Commission's commentary notes for guidance." (*citing Rodd*, 966 F.3d at 745 (noting that the district court first analyzed the prisoner's motion under the commentary to § 1B1.13 to determine whether he satisfied the "extraordinary and compelling" reasons for compassionate release)); *United States v. Gashe*, 2020 WL 6276140 at *3 (N. D. Iowa Oct. 26, 2020) ("I agree with those courts that have found that although [§ 1B1.13] provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the FSA's changes.").

As the proponent of a motion, the inmate bears the burden of proving both that they have satisfied the procedural prerequisites for judicial review—*i.e.*, that they have "exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on [his] behalf" or that 30 days have lapsed "from the receipt of such a request by the warden"—and that "extraordinary and compelling reasons" exist to support the motion. 18 U.S.C. § 3582(c)(1)(A); *see United States v.*

*Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("A party with an affirmative goal and presumptive access to proof on a given issue normally has the burden of proof as to that issue."); *cf. United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) ("[A] defendant, as the § 3582(c)(2) movant, bears the burden of establishing that a retroactive amendment has actually lowered his guidelines range in his case.").

### III. BOP Response to the Coronavirus Pandemic

The BOP has taken significant measures to protect the health of all inmates. The BOP began planning for potential coronavirus transmissions in January 2020. At that time, the agency established a working group to develop policies in consultation with subject matter experts at the Centers for Disease Control (CDC), and in accordance with guidance from the World Health Organization (WHO). The BOP has implemented preventive and mitigation measures including:

- **Modified Operations:** The BOP has implemented modified operations to maximize social distancing in all facilities. Inmates are limited in their movements to prevent congregate gathering. Essential inmate work details, such as Food Service, continue to operate with appropriate screening.

- **Screening of Inmates and Staff:** All newly arriving BOP inmates are screened by medical staff for COVID-19. The screening includes a symptom screen, a temperature check, and an approved viral PCR test. Inmates who arrive symptomatic and/or test positive are placed in medical isolation. Inmates who arrive asymptomatic and test negative are placed in quarantine for at least 14 days and are tested before entering general population. Enhanced health screening of staff, contractors, and other visitors is performed at all BOP locations.

- **Social Visits:** Until recently all social visits were suspended. In accordance with specific guidance designed to mitigate risks, the BOP is now reinstating social visits, where possible to maintain the safety of all staff, inmates, and visitors. All visits are non-contact and social distancing between inmates and visitors is enforced. Visitors are symptom screened and temperature checked, and inmates and visitors must wear appropriate face coverings, in addition to taking other hygiene precautions. Tours continue to be suspended.

- **Legal Visits:** Telephone calls and/or video conferencing with outside counsel is accommodated to the extent possible. In-person legal visits are accommodated upon request, based on local resources, and face coverings are required.

In addition, the BOP has begun administering vaccines to inmates and staff and is committed to doing so as quickly as possible. To date, nearly 193,486 doses have been administered. Further details regarding the BOP's COVID-19 action plan and efforts, and a daily updated resource page are available at: https://www.bop.gov/coronavirus/index.jsp.[1]

Taken together, these measures are designed to mitigate the risks of COVID-19 transmission in BOP institutions. BOP professionals continue to monitor this situation and adjust practices as necessary to maintain the safety of prison staff and inmates while also fulfilling its mandate of incarcerating all persons sentenced or detained based on judicial orders.

Unfortunately, inmates have become ill, and there have been COVID-19 outbreaks at several institutions. Notwithstanding the current pandemic crisis, the BOP must carry out its charge to incarcerate sentenced criminals to protect the public. It must consider the effect of a mass release on the safety and health of both the inmate population and the citizenry. It must marshal its resources to care for inmates in the most efficient and beneficial manner possible. It must assess release plans, which are essential to ensure that a defendant has a safe place to live and access to health care in these difficult times. And it must consider a myriad of other factors, including the availability of transportation for inmates, and of supervision of inmates once released.

In addition, the Attorney General has directed that the BOP prioritizes transferring inmates to home confinement in appropriate circumstances when those inmates are vulnerable to COVID-19 based on CDC risk factors, and the BOP is devoting all available resources to executing that

---

[1] According to the resource page, due to the rapidly evolving nature of this public health crisis, the BOP will update the dashboard daily at 3:00 p.m. based on the most recently available data from across the agency as reported by the BOP's Office of Occupational Health and Safety.

directive. On March 26, 2020, the Attorney General directed the Director of the BOP, upon considering the totality of the circumstances concerning *every* inmate, to prioritize the use of statutory authority to place prisoners in home confinement. Section 12003(b)(2) of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), enacted on March 27, 2020, permits the BOP, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau of Prisons,[2] to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate." Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281, 516 (to be codified at 18 U.S.C. § 3621 note.) To date, the BOP has placed more than 26,837 inmates on home confinement. *See* https://www.bop.gov/coronavirus/.

    Even though the Government is requesting the Court dismiss the defendant's motion, the Government is sensitive to the issues the defendant raises related to the coronavirus pandemic. The Government does not minimize the concern or the risk to inmates such as the defendant. At the present time, the BOP has taken action to mitigate the danger for all inmates. In this case, although the Government concedes that the defendant has identified CDC medical risk factors affecting the likelihood of severe outcomes from COVID-19, after considering the applicable § 3553(a) factors, and determining that the defendant remains a danger to the community, as will be explained below, and the Government objects to his release from custody.

---

[2] On April 3, 2020, the Attorney General gave the Director of the BOP the authority to exercise this discretion.

7

Case 4:94-cr-00194-GAF   Document 1112   Filed 06/15/21   Page 7 of 20

## IV. The Defendant has Not Identified Extraordinary and Compelling Reasons

To be entitled to compassionate release, the Court must find that the defendant has demonstrated that "extraordinary and compelling reasons warrant such a reduction," that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," and only "after considering the factors set forth in section 3553(a)." 18 U.S.C. 3582(c)(1)(A)(i). In *United States v. Jones,* the Sixth Circuit provided a three-step test a district court should follow when reviewing motions for compassionate release. 2020 WL 6817488, at *6 (6th Cir. Nov. 20, 2020). "At step one, a court must find whether extraordinary and compelling reasons warrant a sentence reduction. At step two, a court must find whether such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission. At step three, § 3582(c)(1)(A) instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by steps one and two is warranted in whole or in part under the particular circumstances of the case." *Id* (internal quotations and citations omitted).

The Sentencing Commission's pertinent policy statement related to extraordinary or compelling reasons appears at U.S.S.G. § 1B1.13. As amended November 1, 2018, the statement repeats the text of 18 U.S.C. § 3582(c)(1)(A) and adds that the court should reduce the sentence only if the "defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." Because the Eighth Circuit has not yet decided the applicability of § 1B1.13 as it relates to motions brought directly by inmates, the Government argues that it should still be considered. The BOP promulgated Program Statement 5050.50, amended effective January 17, 2019, to set forth its own internal criteria for evaluating compassionate release requests. Courts have frequently upheld the BOP's discretionary authority in its management

8

duties over federal prisoners. *See Tapia v. United States*, 564 U.S. 319, 331 (2011) ("When a court sentences a federal offender, the BOP has plenary control, subject to statutory constraints, over [the place of imprisonment and treatment programs].").

In this case, the defendant has indicated in his pro se pleading the defendant's medical records confirm[3] that the defendant has been vaccinated against COVID-19. Because the defendant has been vaccinated, he cannot establish an extraordinary and compelling reason for release based on concern related to COVID-19 infection. The defendant's risk is now mitigated.

The defendant alleges in his pro se motion, is that he has previously contracted COVID-19. (D.E. 1111.) At present, the scientific community is aware of reports indicating that persons who were previously diagnosed with COVID-19 can be re-infected. (See https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html.) However, the immune response, including duration of immunity is not yet understood. In the face of scientific uncertainty concerning the likelihood of the defendant's potential reinfection, and the defendant's demonstrated capacity to overcome infection and provide self-care within the correctional setting, the Government respectfully contends that the defendant's request for compassionate release does not articulate either an extraordinary or compelling reason for such release.

As previously discussed, the Eighth Circuit has not yet decided whether § 1B1.13 applies to motions for compassionate release brought directly by an inmate. Nonetheless, the Application Notes for § 1B1.13 are instructive and provide guidance for the Court when determining whether the defendant has demonstrated an extraordinary and compelling reason for a sentencing reduction.

---

[3] The Government has obtained the last year of the defendant's medical records from the BOP and can make the records available if required by the Court. The records are not attached as an exhibit to this pleading in order to protect the defendant's privacy.

9

*See United States v. Gunn,* 2020 WL 6813995, at *1-2 (7th Cir. Nov. 20, 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive."); *United States v. Pelichet*, 2020 WL 6825699, at *5 (D.S.D. Nov. 20, 2020) ("With the understanding that it is not limited by Guideline § 1B1.13, the Court will look to the Sentencing Commission's commentary notes for guidance." (*citing Rodd*, 966 F.3d at 745 (noting that the district court first analyzed the prisoner's motion under the commentary to § 1B1.13 to determine whether he satisfied the "extraordinary and compelling" reasons for compassionate release)); *United States v. Gashe,* 2020 WL 6276140 at *3 (N. D. Iowa Oct. 26, 2020) ("I agree with those courts that have found that although [§ 1B1.13] provides helpful guidance on what constitutes extraordinary and compelling reasons, it is not conclusive given the FSA's changes.")

### A. Medical Condition of the defendant

The application notes for U.S.S.G. 1B1.13 define medical condition of the defendant as:

Medical Condition of the Defendant. --

    (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
    (ii) The defendant is--

      (I) suffering from a serious physical or medical condition,

      (II) suffering from a serious functional or cognitive impairment, or

> > (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(U.S.S.G. § 1B1.13 Application Note 1(A).)

The defendant has made an inadequate showing of extraordinary and compelling circumstances. There is no evidence or claim that he is unable to provide self-care or perform daily living activities. The defendant has failed to sustain his burden to prove that he meets the requirements for compassionate release or a reduction of sentence. The defendant does not have a terminal illness/suffer from any physical or mental condition that substantially diminishes his ability to provide self-care within the correctional facility, etc. Further, the defendant asserts he suffers from COPD, (and hypertension, obesity, and an enlarged prostate), this condition (COPD) is one of the identified CDC medical conditions that places the defendant at an increased risk for severe illness from COVID-19. Of note, defendant has stated he has already had and survived Covid-19. There are no extraordinary and compelling reasons, as those terms are defined for the purpose of 18 U.S.C. § 3582(c)(1)(A), justifying compassionate release in this case.

While the Government is attuned to the difficulties facing inmates, this instance simply fails to meet the requirements of the law and policy. 18 U.S.C. § 3582(c) does not allow a court to modify a term of imprisonment absent extraordinary and compelling reasons that warrant such a reduction. The circumstances here do not rise to such a standard, and the defendant's request does not meet the

requirements for release. In *Dillon v. United States*, 560 U.S. 817, 826, (2010) the Supreme Court determined that the sentencing court could only consider a reduction in sentencing if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. Based on that reasoning, U.S.S.G. § 1B1.13 Application Note 1(A) is mandatory and the defendant's request does not meet the requirements for release.]

### B. Age of the defendant

The application notes for U.S.S.G. 1B1.13 define age of the defendant as:

Age of the Defendant. --

The defendant --

    (i) is at least 65 years old;

    (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

    (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

(U.S.S.G. § 1B1.13 Application Note 1(B).)

In this case, the defendant is only 60 years old. The defendant has made an inadequate showing of extraordinary and compelling circumstances.

Finally, the defendant's motion does not address the measures that the BOP is undertaking to prevent the spread of the virus, including vaccination measures. Although our nation in the midst of a national crisis requiring extraordinary measures, § 3582 contemplates compassionate release, not the widespread release of inmates serving lawfully imposed sentences.

12

## V. Defendant Remains a Danger to the Community and Section 3553(a) Factors Do Not Support Release

This Court may not modify or reduce the defendant's sentence without considering the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense and history and characteristics of the defendant; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from future crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.[4] 18 U.S.C. § 3582(c); *see also United States v. Jones*, 2020 WL 6817488, at *11 (6th Cir. Nov. 20, 2020) (citing *Gall v. United States*, 552 U.S. 38 (2007) ("District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision."). Consideration of these factors, which are not affected by COVID-19, does not allow the Court to grant the defendant's motion for compassionate release. This defendant is a danger to the community and should not be considered for compassionate release.

Under present circumstances, an inmate's diagnosis with a medical condition that the CDC has identified as a risk factor for COVID-19, and from which the inmate may need hospitalization, intensive care, a ventilator to breathe or they may even die, presents an 'extraordinary and

---

[4] U.S.S.G. § 1B1.13(2), states that even if a prisoner demonstrates "extraordinary and compelling reasons," he is not entitled to compassionate release if he poses "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." As discussed above, Courts are divided as to whether § 1B1.13 applies outside the context of a motion filed by the BOP. However, § 3582 unquestionably requires the Court to consider the § 3553(a) factors, which encompasses the arguments the Government has raised with regard to the defendant's presentation of a danger to the community and the need to protect the public.

compelling reason that may warrant compassionate release if other criteria are also met. 18 U.S.C. 3582(c)(1)(A). A review of the defendant's medical records[5] leads the Government to agree that the defendant's chronic medical condition, specifically COPD. sets forth an "extraordinary and compelling" reason for purposes of 18 U.S.C. § 3582(c).] However, defendant has had Covid-19 and did not require hospitalization, intensive care nor a ventilator while he was sick, according to his medical records.

Even though the Government agrees the defendant has identified an extraordinary and compelling reason for release, after considering the factors set forth in § 3553(a), and the relevant policy statement, a reduction in the defendant's sentence is not warranted and the defendant's motion should be denied.

Further, U.S.S.G. § 1B1.13 directs Courts to also consider the factors outlined in 18 U.S.C. § 3142(g) in order to determine whether the defendant remains a danger to the community. Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and recordconcerning appearance at court, and (4) the nature and seriousness of the danger to any person orthe community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). Consideration of these factors—which are not affected by COVID-19—does not allow this

---

[5] The Government has obtained the last year of the defendant's medical records from the BOP and can make the records available if required by the Court. The records are not attached as an exhibit to this pleading in order to protect the defendant's privacy.

14

Court to conclude that this defendant is not a danger to the safety of any other person or the community.

    (1)    nature and circumstances of the charges offense, § 3142(g)(1).

This defendant was convicted of conspiracy to distribute more than 1000 kilograms of marijuana and continuing criminal enterprise resulting in death after a six-week trial. The PSR shows that defendant was reportedly a light heavyweight professional boxer and sold small quantities of marijuana, however his main function was an enforcer and intimidator for the conspirators. He had been involved in the assault of someone who stole drugs from the main defendant and on June 27, 1989, shot and killed Elmont Kerns at the direction of Dennis Moore, Sr., the main co-defendant charged in the case and only defendant who went to trial with defendant Wyrick.

    (2)    weight of the evidence, § 3142(g)(2).

After a six-week trial, a jury found both men guilty and Wyrick was sentenced to life imprisonment for his role in the conspiracy and in the death of Elmont Kerns.

    (3)    defendant's history and characteristics, § 3142(g)(3).

The defendant's criminal history, as shown in the PSR, indicates he had two municipal convictions for DUI and disorderly conduct and one felony conviction for unlawful use of a weapon. He was in the United States Marine Corp (honorable discharge) and was both an amateur and a professional boxer.

Nothing about the COVID-19 pandemic reduces the defendant's danger to others.

Again, this defendant has failed to demonstrate that the § 3553(a) factors the Court considered at the time of sentencing have changed, therefore the Court should deny the

15

defendant's motion for immediate release. There has been no change in circumstances from the time this court ordered his last compassionate release denied to this request.

## VI. <u>**The Court Has No Authority to Place the Defendant on Home Confinement**</u>

The defendant asks the Court to resentence him to home confinement for the remainingtime of his custodial sentence. (D.E. 1111.) The Court should decline the request because read in conjunction, 18 U.S.C. §§3621(b) and 3624(c) impose upon the BOP a qualified obligation to facilitate a prisoners' transition from incarceration in a prison facility to a halfway house. (*See Elwood v. Jeter*, 386 F.3d 842, 844, 847 (8th Cir. 2004).) "There is no question that § 3621(b) provides the BOP with broad discretion to choose the location of an inmate's imprisonment." *Fults v. Sanders*, 442 F.3d 1088, 1090 (8th Cir. 2006). In a case originating from the Western District of Missouri, in a concurring opinion, Judge Bright opined that the Second Chance Act of 2007 marked "an increasing special obligation to help federal offenders successfully reenter into society." *United States v. Wessels*, 539 F.3d 913, 915 (8th Cir. 2008) (Bright, J., concurring) (citingPub. L. No. 110-199, 122 Stat. 657 (Apr. 9, 2008).) The First Step Act, under which the defendantis seeking release, further expanded the BOP's authority to place prisoners, providing more waysto reach rehabilitation goals, but it did not change a district court's authority to place an inmate, and does not provide authority for the Court to order placement in a halfway house or order homeconfinement.

On March 26, 2020, the Attorney General directed the Director of the Bureau of Prisons toprioritize the use of statutory authority to place prisoners in home confinement. The CARES Act, passed on March 27, 2020, temporarily expanded this provision, while leaving its

16

application to the BOP. As part of the CARES Act, Congress sought to address the spread of the coronavirus inprison by permitting the BOP to expand the use home confinement under § 3624(c)(2). Section 12003(b)(2) of the CARES Act suspends, during the emergency of the coronavirus pandemic, thelimitation in § 3624(c)(2) that restricts home confinement to the shorter of 10 percent of the inmate's sentence or 6 months, once the Attorney General makes requisite finding that emergency

conditions will materially affect the function of BOP.[3] The Attorney General made those findings on April 3, 2020, conferring on BOP the authority to expand its use of home confinement, and theBOP is devoting all available resources to executing that directive.

As set out above, and pursuant to 18 U.S.C. § 3642(c)(2), the BOP has exclusive authorityto determine the placement of prisoners. Although, the First Step Act, CARES Act, and Second Chance Act give eligible inmates the possibility to be considered for home confinement or halfwayhouse placement, that decision reset with the BOP. *See United States v. Kluge*, 2020 WL 209287 at *3 (D. Minn. Jan 14, 2020) ("Nothing in the statutes amended by the FSA permits the Court toplace Defendant in home confinement. Under the FSA, the authority to place a prisoner remains with the BOP."); *United States v. James*, 2020 WL 1922568 *3 (D. Minn. April 21, 2020) (holding the district court "lacks jurisdiction to grant [defendant's] motion under the First Step Act, Second Chance Act, or CARES Act.")

Since March 26, 2020, the BOP has assessed and placed a significant number of inmates on home confinement (*see* https://www.bop.gov/coronavirus/index.jsp), focusing on, among other factors, the vulnerability of the inmates, the prisons most at risk, and the dangers posed by the inmates if release. The BOP is in the best position to determine who should be placed

17

on home confinement and has greatly expanded this option for suitable inmates during this time of crisis.

Here, because the defendant does not present an extraordinary and compelling reason that justifies a reduction of his sentence, the Court should not reconsider the terms of his sentence. Regardless of the Court's determination on compassionate release, the authority to determine the defendant's placement for the remainder of his sentence rests squarely with the BOP.

## VII. Record of Rehabilitation is Not an Extraordinary and Compelling Reason

Finally, the defendant asserts he has demonstrated a record of rehabilitation, and the Government does not dispute that the accomplishments the defendant has made in prison, as listed and documented in his motion (D.E. #1111), are laudable. However, rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for a reduction of a term of imprisonment. (U.S.S.G. § 1B1.13 Commentary n.3; 28 U.S.C. § 944(t).)

## **CONCLUSION**

Based on the foregoing, the Government respectfully requests that the defendant's renewed motion for compassionate release be denied.

Respectfully submitted this 15th day of June 2020.

                              Teresa A. Moore
                              Acting United States Attorney

By    */s/ Joseph M. Marquez*

                              Joseph M. Marquez #40634
                              Assistant United States Attorney

                              Charles Evans Whittaker Courthouse
                              400 East 9th Street, Fifth Floor
                              Kansas City, Missouri 64106
                              Telephone: (816) 426-3122

**CERTIFICATE OF SERVICE**

    The undersigned hereby certifies that a copy of the foregoing was delivered on September29 2020, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record and USPS Certified Return/Receipt to thedefendant at:

    Keven Wyrick
    Reg. No. 08724-045
    USP Leavenworth
    P.O. Box 1000
    Leavenworth, Kansas 66048

    */s/ Joseph M. Marquez*
    Joseph M. Marquez
    Assistant United States Attorney