# EXHIBIT

# D

SECOND SUCCESSIVE MOTION
FOR COMPASSIONATE RELEASE DENIED

INCLUDED AS A
SUPPLEMENTARY MOTION

INDEX OF EXHIBITS

ITEM                                                    No.

Doctorate in Biblical Studies
From Calvary Christian
College and Seminary        . . . . . . . .          A

Masters (PHD) Degree in
Theology from Calvary
Christian College and
Seminary                    . . . . . . . .          B

Letters from Inmates/L.C.P.
Class Mentor                . . . . . . . .          C

Letters from Inmates
Teaching about the Lord     . . . . . . . .          D

Program/Class Certificates,
diplomas, etc.              . . . . . . . .          E

Medical Records             . . . . . . . .          F

Statement from Wyrick concerning
what the Lord has done in his life . . . . . . .     G

Letter from federal Public
Defender showing five (5)
inmate deaths after "recovery"
from COVID-19               . . . . . . . .          H

PATTERN SCORE SHEET         . . . . . . . .          I

Security Score Sheet        . . . . . . . .          J

*(handwritten margin note: "Letters from Family")*

On October 21, 2020, this Court denied his motion.

This motion follows:

B. <u>STATEMENT OF FACTS</u>

First, Wyrick would like to apologize to this Court, and the victims of his crimes, and humbly ask for their forgiveness. He takes full responcibility for his actions, and makes no excuses.

Since being incarcerated Wyrick's proudest achievement is giving his life to the Lord and Saviour, Jesus Christ. He regularly attends Christian Church services, and is active in Church programs and activities.

Wyrick, in wanting to better understand his Lord, and what his Lord wanted of him, spent eight years in Biblical Studies from Calvary Christian College and Seminary earning a Dectorate in Biblical Studies. (See attached exhibit #A). Wyrick went on to study another two years, earning a PHD in Theology. (See attached exhibit #B). Combined he spent nearly 5000 hours in Biblical Studies.

He has maintained a great conduct record while in prison. Wyrick only received one 400 series (minor) write-up in over 26 years.

Wyrick has maintained employment and received good to excellent work reports. He worked at UNICOR from 1997 to 2007. (In 2007 UNICOR shut down in most United States Penitentiarys). He worked consistantly in the laundry since returning to Leavenworth.

Wyrick has put forth extraordinary effort at rehabilitation,

even though at the time he had no realistic expectation of release.   To this end Wyrick participated in and completed numerous courses, classes and programs.

These included:

* The Cage Your Rage - Anger Management course.

Wyrick participated in this class to better understand the root causes of his anger, and to learn to channel that anger in to more positive actions.

* Microsoft IC3 - (Word/excell/Access/Power Point/Applications.

Wyrick completed this course, because he recognized that computor knowledge would be important in the future, for obtaining and keeping gainful employment.

* Best Ways to Find a Job (1,2,3); Preparing For Success.

Wyrick took these classes to better prepare himself to find honest employment upon his release.

* Vocational Training Trades Review/ Reading Blueprints; Home Plumbing Systems; Electrical Theory; and Real Estate.

Wyrick has always enjoyed working with his hands, fixing things and building things. He completed these courses to help him gain knowledge to repair or build homes, and to perhaps buy old homes and remodel them.

* Calvary Christian College and Seminary Biblical Studies and Theology (PHD).

Wyrick's proudest achievement has been giving his life to his Lord and Saviour, Jesus Christ. He completed almost 5000 hours of Christian College courses, earning a PHD in Theology and a Decorate in Biblical Studies. He did this to

better know his Lord, to gain a better understanding of what
God wants from him, and to be better able to share God's word
with others.

* The Life Connections Program.

Wyrick has recently graguated from the eighteen (18)
month, residential, Faith based program offered at U.S.P.
Leavenworth.

Wyrick participated in this program to prepare himself
for his return to society. He used his knowledge of the Bible
and the Lord's desires for mankind, to share with other
students, to mentor them (see attached exhibit #C), and to
express God's love for them. (See exhibit #D).

* Wyrick also participated in numerous other self-help
classes and programs (See attached exhibit #E).

Wyrick has several cronic illnesses, which the Centers
for Disease Control and Prevention ("CDC") have found to put
a person at "high risk" of serious illness or death, if he were
to contract the COVID-19 virus.

These include Cronic Obstructive Pulmonary Disease
("COPD"), hypertension, obesity, and an enlarged prostrate.
(See exhibit #F).

He has had COVID-19 once, and it greatly affected his
health. He has also had the two-shot Moderna vaccine.

Wyrick has kept in close contact with his family and
friends who support him and wish to see him released back to
the community.

They know he will be an asset to their community, with

the changes the Lord has made in his life. (See exhibit #G).

He plans to share God's word, as well as mentor others, to help them avoid the pitfalls and poor decisions that he made as a younger man.

## II. LEGAL STANDARDS

### A. THIS COURT HAS AUTHORITY TO REDUCE A TERM OF INCARCERATION UNDER THE FIRST STEP ACT

This Court has authority to order Wyrick compassionate release under 18 U.S.C. §3582(C)(1)(A)(i), as it was amended by the First Step Act ("FSA"). See 18 U.S.C. §3582(C)(1)(1)(A)(i); First Step Act of 2018, Pub. L. 115-391, :603, 132 Stat. 5194 (2018). Since the passage of the FSA, the statute authorizes the defendant to file a motion directly with the court seeking reduction of his sentence for "extraordinary and compelling reasons," once he has exhausted his administrative remedies. Exhaustion occurs when the BOP (warden) denies the defendant's application for compassionate release, or lets the thirty (30) days pass without responding to it. See Brown v. United States, 411 F. Supp. 3d 446, 452 (S.D. Iowa 2019); United States v. McDonel, No. 07-20189, 2021 U.S. Dist. LEXIS 6401 (E.D. Mich. Jan. 31, 2021). See §3582(C)(1)(A)(i). A court "may reduce the term of imprisonment ... after considering the factors set forth in §3553(a) to the extent they are applicable, if it finds that ... extraordinary and compelling reasons warrant such a reduction..." Id. Although the statute also instructs the courts to consider "applicable policy statements issued by the Sentencing Commission," seven U.S. Circuit Courts of

Appeals, including the Sixth Circuit, have held there is currently no applicable policy statement. See United States v. Jones, 980 F.3d 1098 (6th Cir. 2020); United States v. Gunn, F.3d (7th Cir. 2020); United States v. McCay, 981 F.3d 271, 281 (4th Cir. 2020); United States v. Brooker, 976 F.3d 228, 237 (2nd Cir. 2020); United States v. Shkambi, Case No. 20-40543, 2021 U.S. App. LEXIS 10053 (5th Cir. April 7, 2021); United States v. Aruda, Case No. 20-10245, 2021 U.S. App. LEXIS 10119 (9th Cir. April 8, 2021); United States v. Maumau, No. 20-4056, 2021 U.S. App. LEXIS 9510 (10th Cir. April 2021).

The result, these courts have reasoned, is the district court is now free to consider anything, when deciding whether an extraordinary and compelling reason exists. See Brown, 411 F. Supp. 3d at 451, 452-53; United States v. Urkevich, No. 8:03-cr-00037, 2019 U.S. dist. LEXIS 197408, 2019 WL 6037391, at *3 (D.Neb. Nov. 14, 2019).

Therefore, this Court is not bound by the Sentencing Commission's outdated Policy Statement (U.S.S.G. §1B1.13(a)) or it's commentary thereto, when considering an inmate filed motion for compassionate release. See Brooker, 976 F.3d at 237.

Courts across the country have found that the COVID-19 pandemic and its attendant risk to vulnerable inmates such as Wyrick provided "extraordinary and compelling" reasons, within the meaning of §3582(C)(1)(A)(i). United States v. Carson, No. 3:06-cr-5059 (W.D. Wash. Jan. 4, 2021)(finding extraordinary and compelling reasons based on COVID-19 and defendant's obesity); United States v. Blanco, No. 4:93-cr-20042, Dkt#2784

(N.D. Cal. Dec. 14, 2020)(finding extraordinary and compelling reasons based on COVID-19 and high risk factors); United States v. Hosek, No. 5:16-cr-50111, 2020 WL 7318107 (D.S.D. Dec. 11, 2020)(same); United States v. Williams, 473 F. Supp. 3d 772 (E.D. Mich. 2020)(granting release based on COVID-19 and defendant's age); United States v. Hardnett, No. 3:03-cr-212-MHL, Dkt No. 363 (E.D. Va. Aug. 27, 2020)(granting release to 45 year old defendant with irregular heartbeat, subject to COVID-19.

As many courts have recognized, "[e]ven in the best run prisons, officials might find it difficult, if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff; practicing fastidious hygene and keeping a safe distance of at least six feet from others." United States v. Esparza, No. 1:07-cr-294-BLW, 2020 WL 1696084 (D. Idaho April 7, 2020); See also United States v. Muniz, No. 4:09-cr-199-1, 2020 WL 1540325, at *1 (S.D. Tex. March 30m 2020)("[W]hile the Court is aware of the measures taken by the Federal Bureau of Prisons, news reports of the virus's spread in detention centers ... demonstrate that individuals housed within our prison systems nonetheless remain particularly vulnerable to infection.")

For all these reasons, courts in this district and across the country have concluded that a defendant's vulnerability to COVID-19, particularly when weighed in the ballance of having high risk factors, and favorable §3553(a) factors, such as rehabilitation and length of sentence already served, constitute

an "extraordinary and compelling reason" to grant compassionate release.

Moreover, many courts across the country have found that a drastic disparity in sentencing can be an extraordinary and compelling reason supporting compassionate release, or a sentence reduction. See Brown, 411 F. Supp. 3d at 453; McCoy, 981 F.3d at 286; Brooker, 976 F.3d at 238; United States v. Taniguchi, No. 00-50, 2020, U.S. Dist. LEXIS 204777, 2020 WL 6390061, at *3-5 (S.D. Ohio Nov. 2, 2020); United States v. Baker, No. 10-20513, 2020 U.S. Dist. LEXIS 145670, 2020 WL 4696594, at *3 (E.D. Mich. Aug. 13, 2020); United States v. Young, 458 F. Supp. 3d 838, 2020 WL 1047815 (M.D. Tenn. 2020); and United States v. Rodriguez, No. 3:00-CR-00071 (S.D. Iowa, July 14, 2020).

These courts agreed that when sentencing disparity (a §3553(a) factor) is combined with the risk of COVID-19, and extraordinary efforts at rehabilitation, extraordinary and compelling reasons exist for release or sentence reduction.

### B. DEFENDANT HAS SATISFIED THE STATUTORY EXHAUSTION REQUIREMENT

Wyrick has diligently persued administrative relief in light of COVID-19, satisfying the exhaustion requirement of §3583(c)(1)(A). His efforts within the BOP have been rejected. He sought compassionate release from the warden at U.S.P. Leavenworth on December 8, 2020 citing the risk from exposure to COVID-19 for inmates like him. The request was denied on January 6, 2021. (See attached exhibit #G). The basis for the

denial was that he could not meet one of the narrowly prescribed set of catagories for relief, listed in Program Statement 5050.50.

The FSA authorized this Court to act upon Wyrick's motion provided he exausts his administrative remedies. "Exhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it." United States v. Brown, 411 F. Supp. 3d 446, 452 (S.D. Iowa 2019); United States v. Mandaca, NO. 89-cr-0655, 2020 U.S. Dist. LEXIS 37483, 2020 WL 1029024, at *2 (S.D. Cal. March 3, 2020).

Accordingly, Wyrick's request for compassionate release from this Court is ripe for decision, and this Court is empowered to grant it.

III.  ARGUMENT

This Court should grant motion for compassionate release because (1) his age and medical condition put him at a particularized increased risk were he to contract COVID-19 (or one of its many variants) again; (2) he is housed at a BOP facility that has been struggling unsuccessfully with the spread of the virus for 9 straight months; (3) he has already served over 26 years, which is more than the national average for his crime; (4) the last year of his incarceration as well as the foreseeable future, have been under exceptionally punitive condictions due to BOP efforts to respond to the pandemic; (5)  he has demonstrated consistant extraordinary efforts at rehabilitation; (6) he will be released to supervision; and (7) even after 26 years of incarceration,

Wyrick has strong family support to which he can return, and an aging parent who hopes for his help.

### A. THE CORONA VIRUS PANDEMIC PRESENTS AN EXTRAORDINARY AND COMPELLING REASON TO GRANT RELEASE

1. CONDITIONS IN THE BOP PRESENT AN EXTRAORDINARY AND COMPELLING REASON.

As of January 22, 2021, more than 44,000 BOP inmates were confirmed positive for COVID-19 and 202 BOP inmates have died. (unless otherwise noted, BOP data herein comes from the BOP corona virus website, available at https://www.bop.gov/coronavirus/, and is as of January 22, 2021). These numbers have climbed steeply since late September, 2020. Since late November the number of BOP inmates with confirmed positive has more than tripled and many more inmates have died. Of the over 100,000 COVID tests the BOP has given to inmates, half have come back positive.

Data from individual BOP facilities shows how the virus can run rampant among the inmate population once the virus enters a prison. For example, at one point at Seagleville F.C.I., 73 percent of inmates were infected (1,292 out of 1,771), four died. At Tusson F.C.I., 895 prisoners were infected with ten deaths. At Terminal Island F.C.I., it was nearly 77 percent (577 out of 754), ten inmates died. Indeed, there is "growing evidence of the BOP's chronic mismanagement of it vulnerable population during the COVID-19 pandemic." United States v. Woodard, 2020 WL 3528413 at *3 (E.D. Va. June 26, 2020).

One need look no further than where Wyrick is now housed. Of the total U.S.P. Leavenworth population of 1,525 over 900 inmates have tested positive - two have died. (The total inmate population figure includes 1,296 at the U.S.P. and 229 at the camp. See U.S.P. Leavenworth website, available on line at:

https://www.bop.gov/locations/institutions/lvn/.

Thus, more than 60 percent of the inmate population has been infected to date.

More concerning, U.S.P. Leavenworth reported its first positive case, in an inmate, on July 19, 2020. Since then, it has never been without positive cases among the inmate population, and has had four significant outbreaks, in September, October, January and February. That Leavenworth has been reporting positive cases for nine straight months demonstrates that the administration there has not managed to get the virus under control. Worse, the facility has multiple times seen inmate positives ebb to single digits only to spike upwards into the triple digits again.

Nor is the fact that Wyrick has already contracted the Corona Virus any guarantee of immunity. The Centers for Disease Control has indicated that immunity, for those who have previously been infected with COVID-19, may only last 90 days. (See Coronavirus Disease 2019 (COVID-19), Duration of Isolation and Precautions for Adults with COVID-19, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/hcp/duration-isolation.html. ("the

duration and robustness of immunity to SARS-CoV-2 remains under investigation ... [P]eople appear to become susceptable to reinfection around 90 days after onset of infection."). Further, this does not even take into account the "long term covid", or "long COVID", cases.

"Long COVID" continues to gather attention and medical research reporting. As reported in the Wall Street Journal on March 16, 2021, page A9, "In February, the National Institutes of Health announced a major initiative to study long Covid, backed by $1.15 billion dollars ... 'Large numbers of patients who have been infected ... continue to experience a constellation of symptoms long past the time that they've recovered from the initial stages ... said Director Francis S. Collins."

For proof of the effects of long COVID, one need look no further than the BOP. In a letter to the Honorable John R. Tunheim, Federal Public Defender Keala Ede (Office of the Federal Defender, District of Minnesota), in United States v. Gbor, No. 14-cr-00344(5)(JRT/TNL) reported the death of five (5) inmates who had previously been declared "recovered" by the BOP. (See attached exhibit #H). Later the BOP announced yet two more "recovered" inmate deaths. One, Leonard Williams, contacted COVID-19 in late February, but "on Monday, March 22, 2021," the BOP said, "In accordance with [CDC] guidelines, Mr. Williams was converted to a status of recovered following the completion of medical isolation and presenting with no symptoms. On Saturday, April 3, 2021, Mr. Williams became

unresponsive." He was dead before he got to the hospital. Another inmate, Jaime Benavidas, caught COVID in December, but was declared "recovered" 10 days later. But "on Thursday, March 25, 2021, Mr. Benavides condition worsened and he was transported to a local hospital for further evaluation." He later died. (BOP Press releases, Inmate Death at MCFP Springfield). Therefore, whether from the effects of long covid, or from re-infection inmates who have had COVID-19 are not safe, or necessarily immune from the effects of COVID-19. This is especially true in light of the variants which are, even now spreading across the country. See <u>United States v. White</u>, No. 3:17-CR-00104-2, 2021 WL 268719, at *4 (M.D. Tenn. Jan. 27, 2021).

On April 7, 2021, the U.S. District Court for the Eastern District of Michigan "expressed skepticism at the government's reinfection argument." The government claimed that because the defendant had taken the moderna vaccine, he was immune from the corona virus, and should be denied compassionate release. The Court found that 246 fully vaccinated Michiganders contracted COVID-19 between Jan. 2021 and March, 2021. See <u>United States v. Sweet</u>, 2021 U.S. Dist. LEXIS 69177 (E.D. Mich. April 7, 2021).

This shows that neither prior infection with COVID-19, nor being vaccinated assures future immunization from COVID-19 or its many variants.

2.  WYRICK'S AGE AND MEDICAL ISSUES PREDISPOSE HIM TO
    HIGHER RISK OF SEVERE ILLNESS OR DEATH FROM COVID-19
                    OR ITS VARIANTS

Wyrick is 60 years old. He suffers from Cronic Obstructive
Pulmonary Disease, hypertension, obesity, and enlarged prostrate.
(See exhibit #I). COPD, obesity, and hypertension have both
been recognized, along with his age group, as being in the
"high risk" catagory for serious illness, or even death, from
COVID-19 or its variants. See, CDC, OLDER ADULTS, available at
https://www.cdc.gov/coronavirus.2019-ncov/needextra-precautions/
older adults.html (as of Jan.18,2021); See also, People of Any
Age with Underlying Medical Conditions, CDC (July 12, 2020,
https://bit.ly/3854NFY. (Obesity and COPD ar "High Risk"
factors).

Moreover, courts across this country including district
courts within the Eighth Circuit have held that having medical
conditions,  recognized by the CDC as being "high risk", is
an "extraordinary and compelling reason" for granting compassionate
release. See, e.g. United States v. Conner, No. CR07-4095-LTS,
2020 WL 3053368 at *7 (N.D. Iowa June 8, 2020); United States
v. Rodriguez, No. 3:00-cr-00071, (S.D. Iowa July 14, 2020);
United States v. Tillman, No. 12-CR-2024-CJW-MAR, 2020 WL
3578374, at *5 (N.D. Iowa, June 30, 2020); United States v.
Williams, No. 06-CR-0143 (WMW/FLN), 2020 WL 3097615, at *2
(D. Minn. June 11, 2020); United States v. Gutman, No. RBD-19-
0069, 2020 U.S. Dist. LEXIS 84316, 2020 WL 246735, at *2
(D.Md. May 13, 2020)(finding defendant's age (56), hypertension
and obesity satisfied "extraordinary and compelling reasons";

United States v. Zukerman,     F. Supp. 3d    , 2020 U.S. Dist.
LEXIS 59588, 2020 WL 1659880, at *5 (S.D.N.Y. April 3, 2020)
(same as above); United States v. Ullings, No. 1:10=CR-00406,
2020 U.S. Dist. LEXIS 83104, 2020 WL 2394096, at *4 (N.D. Ga.
May 12, 2020)(Obesity, hypertention & age, extraordinary and
compelling reasons).

   Thus Wyrick's age, COPD, obesity and hypertention all
weigh strongly in favor of compassionate release, even more
so when one considers the effects of his 26 plus years of
incarceration.

   It makes little sence to wait for Wyrick's illnesses to
progress in severity and his age to increase, particularly in
light of the intensity and persistence of the COVID-19
pandemic. Any preported benefit to society to be gained by
Wyrick spending additional time in prison on top of the 26
plus years he has already served is far outweighed by the grave
risk to Wyrick's health - and the health of others at U.S.P.
Leavenworth - should he contract the virus again. And, as
discussed in more detail below, further incarceration is simply
not necessary to protect the public given the amount of time
Wyrick has already served and the impressive rehabilitative
efforts that he consistantly has made during his incarceration.
Wyrick, therefore, believes that he has shown an "extraordinary
and compelling reason" for this Court to grant his compassionate
release.

### B. WYRICK IS NO LONGER A DANGER
### TO THE COMMUNITY

Even where extraordinary and compelling reasons exist, as in this case, the district court must still consider the 18 U.S.C. §3553(a) factors, before reducing a defendant's sentence.

Section 3553(a) provides that the sentencing court must impose a sentence that is "sufficient, but not greater than necessary, ... (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deferrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[]" 18 U.S.C. §3553(a)(2)(A)-(D). The sentencing court is also directed to consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant" and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]" Id. §3553(a)(1),(6).

### 1. PUNISHMENT, DETERRENCE, PROTECTION OF
### SOCIETY, AND REHABILITATION

Wyrick opines that his nearly three decades of incarceration for his offenses of conspiracy to distribute marijuana and murder in furtherance thereof is insufficient to address the seriousness of the offense, promote respect for the law,

deter him and others from criminal conduct, provide just punishment, and protect the public from Wyrick. (citing §3553-(a)(2)(A)-(C)).

First, the national average sentence in the Federal Courts for Murder is 255 months (21 years, 3 months). The national average sentence for drug trafficking is 76 months, according to the U.S. Sentencing Commission's Annual Report of Federal Sentencing Statistics available at: https://www.ussc.gov/research/sourcebook-2019.

Therefore, the combined average is 331 months, or 26 years, 6 months. Wyrick has served this sentence.

Wyrick posits that he has served sufficient time to satisfy these factors.

Wyrick anticipates the government will argue that he is still a danger to the community, based on his original offense. While Wyrick agrees that his offenses were terrible, the person who committed those acts is not the person who now stands before this Court.

Wyrick's time in prison has been exemplified by his remorse and his reformation. He has spent untold hours in programs, classes and study courses, in his effort to change. Wyrick knows this will not make up for the taking of another's life. He wishes he could go back and change what he had done, but he cannot. So, he chose instead to change his future, so he would never be tempted to do such things again.

The important goal of rehabilitation has also been addressed by Wyrick's educational, vocational training, and

personal growth while in custody. (See 18 U.S.C. §3553(a)(2)(D)). He has earned two college degrees, and completed numerous classes on self improvement, both mentally, and physically, and most importantly, spiritually. (See Statement of Facts, infra.)

Wyrick would also point out that many other courts, in reviewing compassionate release motions by defendants convicted of murder, and/or murder in furtherance of drug dealing, held that the defendants efforts at rehabilitation, combined with their lengthy sentences already served, served to diminish their danger to the community. For instance: In United States v. Rodriguez, No. 00CR-761-2 (JSR) 2020 U.S. Dist. LEXIS 181004, 2020 WL 5810161, at *1 (SDNY Sept. 30, 2020) the defendant was convicted of a "brutal murder" of a government informant who was responsible for the arrest of Rodriguez's codefendant in a cocaine drug conspiracy. Rodriguez, after a seven week trial, was convicted and sentenced to life imprisonment. Rodriguez moved the court for compassionate release, based on his health issues which made him particularly - vulnerable to serious illness from COVID-19, and his extraordinary efforts at rehabilitation. The district Court agreed that due to the length of sentence served, his extraordinary rehabilitative efforts, and his health issues combined to make an extraordinary and compelling reason to grant the motion. Further, despite the government's assertion that Rodriguez was still a danger to the community, the court found that a sentence of thirty years was sufficient, and thereby reduced his sentence from life to thirty years.

*In <u>United States v. Lopez</u>, No. 97-01117-ACK-2, 2020 U.S. Dist. LEXIS 200076 (D.H. Oct. 27, 2020), the defendant was convicted of Conspiracy to Distribute Heroin, and use of a Firearm during a Drug Trafficing Crime which resulted in murder. Lopez, after a 9 day trial was convicted. He was sentenced to life on the murder count. Lopez moved the court for compassionate release based on his unusually long sentence and his extraordinary rehabilitation efforts. The court also looked at his age at the time of the offense, his minimal prior criminal record, his minimal institutional disciplinary record, his charity work, his informal support of other inmates, his programing, etc.

Base on these facts the Court granted his motion, reducing his sentence to time served, with special condition of supervision.

*In <u>United States v. Fisher</u>, No. 1:83-cr-00150-PAC-1, 2020 U.S. Dist. LEXIS 188065 (S.D.N.Y. Oct. 9, 2020), the defendant was charged with Conspiracy to distribute drugs, Continuing Criminal Enterprise, Racketeering Conspiracy, Racketeering, Conspiracy to Murder government witnesses, and distribution of Heroin. After a six-week trial, he was sentenced to life. Fisher moved for compassionate release citing the COVID-19 pandemic, his age, and his efforts at rehabilitation.

The Court found that his age and cronic health conditions made Fisher a high risk of serious illness or death from COVID-19, and therefore found Fisher had met the "extraordinary and compelling reasons" requirement of 18 U.S.C. §3582(C)(1)(A)(i).

The Court went on to find that Fisher's age, lack of any significant institutional disciplinary record showed he was no longer a danger to the community. The Court then granted his motion, reducing his sentence to time served.

*Two U.S. District Courts within the Eighth Circuit have held that the effects of aging, and a clean disciplinary record, combined with extraordinary efforts at rehabilitation are grounds for granting relief. See United States v. Ledezma-Rodriguez, No. 3:00-CR-00071, 2020 U.S. Dist. LEXIS 123539, 2020 WL 3971517, at *6 (S.D. Iowa July 14, 2020); United States v. Brown, 411 F. Supp. 3d 446, 452 (S.D. Iowa 2019), amended on reconsideration, No. 4:05-CR-00227-1, 2020 U.S. Dist. LEXIS 87133, 2020 WL 2091802 (S.D. Iowa April 29, 2020).

Therefore, Wyrick has shown that the 26-plus years he has been in prison are sufficient to address the seriousness of the offense; promote respect for the law (as shown by his minimal institutional disciplinary record - only one minor report in 26 years); deter him and others from criminal conduct, (as shown by the national average for his crimes); provide just punishment, and protect the public.

2. NATURE and CIRCUMSTANCES of the OFFENSE, and HISTORY and CHARACTERISTICS of WYRICK

Wyrick admits that the nature and the circumstances of his offense is serious. However, he has expressed remorse, both in words and actions. He gave his life to the Lord Jesus Christ. He has prayed for forgiveness, and that the victim's family

not only forgive him, but find peace in their lives. He has spent countless hours mentoring and guiding other inmates. This and the time and effort spent in programs, classes, and study, his nearly perfect disciplinary record; even though he had no realistic possibility of ever being released from prison, he endeavored to reform.

His criminal history is minor, only one felony, and two misdemeanors. Wyrick's time in prison is characterized by many years of programming, and coursework designed for self-improvement.

Wyrick has numerous family ties, including family members who will provide for him. His Father, Jerry Wyrick, who lives at 106 Trinity Cir. Harrisonville, MO. 64701, has graciously offered His home and help in obtaining a job. Before, being arrested Wyrick, was a Marine, who received an "Honorable" discharge, and a professional boxer. While incarcerated he has studied to learn new skills to assist him in finding gainful employment.

Therefore, while his offense was serious, his change in character, exemplified by his extraordinary rehabilitation effort, weighs in favor of his not being a danger to the community, as shown by the Department of Justice, and Federal Bureau of Prison's "PATTERN" score sheet, which shows Wyrick to be a "MINIMUM" risk of recidivism. (See exhibit #I).

Moreover, Wyrick plans to continue his mentoring of people, especially "at risk" youth upon his release. He plans to volunteer through his church to give his story to people, to see, not only that they should not make the poor decisions he

made, but also so they can see that people can change, especially with the Lord in their lives.

Wyrick is 60 years old. Because of his age, according to the U.S. Sentencing Commission's, 'The Effects of Aging on Recidivism Among Federal Offenders', he has "aged out" of criminal conduct. Id. See also, United States v. Rodriguez, 2020 WL 5810161, at *6 (observing that the defendant's release at age of 60 would "mak[e] the likelihood of re-offending even more remote").

"[R]ight or wrongly, this country's criminal justice system is premised on the idea that a person can - and hopefully will - change after several years locked in prison". Ledezma-Rodriguez, 2020 WL 3971517, at *6 (S.D. Iowa July 14, 2020). "The BOP tries to facilitate this through classes, case managers, reentery programs, time credits, and security classifications," which Wyrick has taken full advantage. This is shown through his extraordinary efforts to reform himself, his BOP PATTERN score of minimum risk, as well as presently Wyrick has 8 security points which would make him a minimum security inmate. He is awaiting transfer to a low security facility, as soon as the BOP starts transfering inmates again. (They stopped transfers during the coronavirus pandemic). (See exhibit #J).

3.  DISPARITY in SENTENCE ANALYSIS

Finally, the discrepancy between the sentence Wyrick received in 1995 and the sentence he would have received today

is significant. (According to the national average for murder
(255 months), and drug offenses (76 months) in 2020, see U.S.
Sentencing Commission, Fisical Year (FY) 2019 Overview of
Federal Criminal Cases (2020); see also, U.S. Sentencing
Commission, 2020 Anual Report and Sourcebook of Federal Sentencing
Statistics (2020). available at https://www.ussc.gov/research/
sourcebook-2020). Combined the national average for murder and
drug offenses is 331 months. See United States v. Quinn, No.
91-CR-00608-DLJ1-RS,2020 U.S. Dist. LEXIS 110247, 2020 WL
327536, at *3 (N.D. Cal. June 17, 2020).

Considering this data, it is indisputable that Wyrick
received an unusually long sentence.

This Court sentenced Wyrick in 1995 to a "Life" sentence,
under the then mandatory U.S. Sentencing Guidelines. IN 2005
the U.S. Supreme Court ruled that district courts are empowered,
at their discretion, to consider how a defendant's circumstances
may call for imposing a sentence either above or below the
guideline range. United States v. Booker, 543 U.S. 220, 264-65
(2005).

In other words, following Booker, the ranges in the
Sentencing Guidelines are no longer mandatory so long as a
sentence follows statutory requirements.

This Court, in sentencing Wyrick, was not allowed to
consider a sentence outside the range. Thus, it is now proper
for the Court to consider the fact that the Guidelines have
changed - from mandatory to discretionary - in determining
whether to grant compassionate release. S. Rep. No. 98-221 at

121 ("Specific review and reduction of a term of imprisonment
for "extraordinary and compelling reasons' and to respond to
changes in the guidelines.")

Moreover, the marijuana laws across this country have,
and continue to, change the drug Wyrick was convicted of was
marijuana. Eleven states have legalized the recreational use
of marijuana, and thirty-three states, including Missouri;
have legalized marijuana for medical use. Deborah M. Ahrens,
"REtroactive Legality: Marijuana Convictions and Restoritive
Justice in an Era of Criminal Justice Reform, 110 J. Crim. L.
& Criminology 379, 393-97 (2020)" Twenty-three years ago,
marijuana was formally illicit for all purposes in all states
and under federal law; ... the legal landscape for marijuana
has changed rapidly and reflects broader trends in criminal
law reform." Id. at 393.

Federal Law continues to make possession and distribution
of marijuana a crime. But, it is questionable whether this will
stand scrutiny, as marijuana under federal law is listed as a
Schedule I drug. Schedule I drugs must have no recognizable
legitimate Medical use. However, the Food and Drug Administration
("FDA") now recognized CBD, a chemical found only in the
marijuana plant, has a legitimate medical use. Therefore, is
is doubtful this law will withstand judicial scrutiny.

Wyrick opines that if he was sentenced today his sentence
on the marijuana conviction would be significantly less than
life. The disparity between what he received then, and what he
received now, is both a factor in finding extraordinary and

compelling reasons to grant Wyrick relief, and a disparity in sentencing under §3553(a) compelling relief.

According to Wyrick's research, which is limited to lexis-nexis electronic law library, in the BOP, no one has been charged with a continuing criminal enterprise in over twenty years, in the Western District of Missouri.

Wyrick submits that is is hard to reconcile his two life sentences, with modern sentencing regimes and statistics, and especially with an ever-increasing body of research that questions the effectiveness of imprisoning convicted defendants for a period greater that reasonably necessary. See generally, Marc Mauer, "Long Term Sentences; Time to Reconsider the Scale of Punishment," 87 UMKC L. Rev. 113,114 (2018)(collecting governmental and non-governmental works and studies on the minimal effect of long federal prison sentences on deterrence, especially on drug-related crimes).

Therefore, there is certainly a sentencing disparity between what Wyrick received in 1995, and what he would receive if sentenced today.

CONCLUSION

WHEREFORE, for good cause shown in the foregoing, Wyrick requests this Court grant his Motion for Compassionate Release, and either release him, or reduce his sentence to thirty years.

Respectfully submitted this 27th day of May, 2021.

Keven L. Wyrick, 'pro se'
#
U.S. Penetentiary
P.O. Box 1000
Leavenworth, KS 66048

CERTIFICATE OF SERVICE

I, Keven Wyrick, do hereby certify that I served a true copy of the foregoing motion for compassionate release, on the Respondent, via First Class U.S. Mail, addressed to:

> Western District of Missouri
> United States Attorney's Office
> 400 E 9th Street, Room 5510
> Kansas City, Missouri  64106

and placing same into inmate legal mail, at U.S.P. Leavenworth, this *May 27*

Signed and sworn, under the penalty of perjury, pursuant to 28 U.S.C. §1746.

*Keven Wyrick*
Keven Wyrick, 'pro se'