Keven Wyrick #08724-045
Federal Correctional Institution
9595 W. Quincy Ave.
Littleton, Colorado 80123
Appearing Pro Se

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
Western Division

UNITED STATES OF AMERICA,

Plaintiff,

    v.

KEVEN L. WYRICK

Defendant.

Case No. 4:94-cr-00194-012-
     CR-W-GAF

DEFENDANT'S MOTION TO
REDUCE SENTENCE PURSUANT
TO 18 U.S.C. §3582(c)(1)(A)
[Fourth Motion]

COMES NOW, the defendant, Keven L. Wyrick ("WYRICK"), in pro se, to respectfully move this Court for a sentence reduction to to a term of 40 years of incarceration pursuant to 18 U.S.C. §3582(c)(1)(A) and the newly amended United States Sentencing Guidelines, §1B1.13. WYRICK submits the following extraordinary and compelling reasons as grounds for his reduced sentence.

## I. Procedural History

On May 25, 1995, WYRICK was charged with one count of conspiracy to distribute marijuana, one count of engaging in a continuing criminal enterprise resulting in death and one count of conspiracy to distribute marijuana resulting in death. On September 24, 1996, trial began; trial ended on November 1, 1996 where defendant was convicted of counts two and three. On May 22, 1997, WYRICK was sentenced to life imprisonment.

On August 31, 2020, WYRICK filed a motion for compassionate

release concerning the coronavirus pandemic and his vulnerability to COVID-19 while incarcerated. On October 21, 2020 this Court entered an Order denying his initial motion for compassionate release. (Doc. 1102).

On June 1, 2021, WYRICK filed his second motion for compassionate release Doc. 1110) and this court denied it on July 15, 2021. (Doc. 1115).

On January 31, 2023, WYRICK filed a third motion for compassionate release (Doc. 1122). The Court denied WYRICK's third motion for compassionate release after analyzing the Section 3553(a) factors and determining that his immediate release is not warranted.

## II. Administrative Remedies

Defendant WYRICK exhausted his administrative remedies once by making a request for compassionate release consideration to the warden of his prison and the lapse of 30 days. "Exhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it." United States v. Brown, 411 F. Supp. 3d 446, 452 (S.D. Iowa 2019). See also 18 U.S.C. §3582(c)(1)(A). In an abundance of caution, WYRICK also submitted another request to the current warden of his prison (Exhibit A). The warden has not responded to WYRICK's request and, as such, this Court is empowered to consider and grant WYRICK's request for a sentence reduction under 18 U.S.C. §3582(c)(1)(A).

## III. Amended Guidelines (1B1.13)

WYRICK's previously filed compassionate release motions each requested that the Court grant him immediate release and both the Court and the Government made clear that his circumstances do not warrant compassionate release. WYRICK is not requesting that the

Court issue an order granting him immediate release anymore. Instead WYRICK requests that the Court grant him a sentence reduction to a term of incarceration of an appropriate amount of years, an aggregate sentence of 40 years or 480 months.

The United States Sentencing Commission issued Amendments to the Sentencing Guidelines on April 27, 2023 which became effective as of November 1, 2023. Included in its Amendments, and relevant to the instant pleading, are the amendments made to §1B1.13 concerning the description of the permissible bases for a reduction in sentence under 18 U.S.C. 3582(c)(1)(A). 1B1.13 now includes a section which states: UNUSUALLY LONG SENTENCE---If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such a change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

This USSC Guideline Amendment was not available to the Court at the time that the Court denied WYRICK's previous motions. In addition, WYRICK is no longer requesting immediate release as he did in his prior compassionate release motion. As he has served nearly thirty years of incarceration, changed his life, rehabilitated himself, earned two doctorate degrees from prison, and is serving an unusually long sentence (there is not a sentence longer than life), he qualifies for the Court's consideration of his circumstances and a sentence

-3-

reduction.

## IV. Extraordinary and Compelling Reasons

Defendant WYRICK submits several extraordinary and compelling reasons for a sentence reduction. His unusually long sentence alone warrants the courts consideration for a substantial reduction. It cannot be reasonably stated that WYRICK's rehabilitation while in prison is not extraordinary. As the U.S. Sentencing Commission states in its Guidelines Amendments, "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." Amendment 1B1.13(d). WYRICK submits thousands of hours of education and prison programming via his sworn declaration and exhibits for the Court's consideration. He has not received any write-ups during the entire time he has been incarcerated (just under 30 years) which, in itself, is rather extraordinary given the Bureau of Prisons propensity to charge inmates with infractions of its extensive rules and regulations.

### A. Change in the Law

At the time that WYRICK was sentenced to life imprisonment the Sentencing Guidelines were mandatory. WYRICK was given a **mandatory** life sentence under these Guidelines and the judge did not have any discretion to sentence him to anything less than life for the crime he stood convicted of.

In United States v. Booker, 435 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), the Supreme Court found the Sentencing Guidelines to be advisory, not mandatory. However, Booker is not retroactive. United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005); cf. Jones

-4-

v. United States, 431F. Supp. 3d 740, 743 (E.D. Va. 2020)(noting that by not making Booker retroactive, there is a "lost generation, a group caught in national purgatory, where individual citizens pay penance for the constitutional errors of the sovereign"). WYRICK is part and parcel of the "lost generation" that the Jones Court makes reference to.

The average federal sentence for murder is approximately 21 years. See United States v. Qadar, No. 00-CR-603, 2021 U.S. Dist. LEXIS 136980, 2021 WL 3087956, at *12 (E.D.N.Y. July 22, 2021)(noting that the average federal sentence for murder in fiscal year 2020 was approximately 21 years); United States v. Tellier, No. 92-CR-869, 2022 U.S. Dist. LEXIS 84489, 2022 WL 1468381, at *4 (noting that according to U.S. Sentencing Commission statistics, for fiscal years 2015-2021, the median sentence and length of imprisonment for murder was 240 months, and the mean sentence and length of imprisonment for murder was 262 and 263 months, respectively). See also Graham v. Florida, 560 U.S. 48, 93, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (Roberts, J., concurring)(noting that a life-without-parole sentence was "far more severe than the average sentence imposed on those convicted of murder or manslaughter, who typically receive under 25 years in prison"). It cannot be reasonably argued that WYRICK's CCE conviction would warrant a life sentence if he were to be sentenced today in light of the person he is today given these statistics. Today the Court would not be constrained by the mandatory nature of the U.S. Sentencing Guidelines. Today the Guidelines are not mandatory. Today it is apparent that WYRICK would likely receive a sentence that is in line with current statistics, a sentence in the range of 240 months. Yet, WYRICK does not ask the Court for a reduction to a

sentence of anywhere near the national average for murder. He asks the Court for nearly double that, a sentence of 480 months.

Since the First Step Act of 2018 was passed and well before the U.S. Sentencing Commission issued its updated Guidelines in 2023, courts across the nation have reduced pre-Booker lengthy sentences for defendants whose offenses included participation in a drug-related killing or a drug conspiracy that involved murder. See, e.g., United States v. Russo, ___F.Supp.3d___, 2022 WL 17247005, at *11 (E.D.N.Y. Nov. 28, 2022)(reducing life sentence to 35 years for one defendant incarcerated for 29 years and another incarcerated for 32 years); United States v. Fenner, RDB-95-095, 2022 U.S. Dist. LEXIS 65585, 2022 WL 1062021, at *7 (D. Md. Apr. 8, 2022) and ECF 235 (reducing 55-year sentence to 27 years imprisonment); United States v. Gray, CCB-95-364, 2021 U.S. Dist. LEXIS 88855, 2021 WL 1856649, at *1 (D. Md. May 10, 2021)(reducing life sentence to 27 years of imprisonment); United States v. Hill, JKB-96-00399, 2020 U.S. Dist. LEXIS 75679, at *2 (D. Md. Apr. 30, 2020)(reducing sentence from 480 months to 330 months); United States v. Cruz, JCH-94-112, 2021 U.S. Dist. LEXIS 68857, 2021 WL 1326851, at *15 (D. Conn. Apr. 9, 2021)(reducing life sentence to time-served after about 27 years); United States v. Perez, JBA-02-7, 2021 U.S. Dist. 41040, 2021 WL 837425, at *6 (D. Conn. Mar. 4, 2021)(reducing life sentence to time-served after 23 years); see also United States v. Stockton, ELH-99-352, 2021 U.S. Dist. LEXIS 50585, 2021 WL 1060347, at *15 (D. Md. Mar. 17, 2021)(reducing a 40 year sentence to approximately 22 years of imprisonment); Carter v. United States, ELH-00-0100, 2020 U.S. Dist. LEXIS 68343, 2020 WL 1914766, at *9 (D. Md. Apr. 17,

2020)(reducing life sentence plus 30 years to 35 years of imprisonment);
United States v. Cheese, ELH-98-259, 2020 U.S. Dist. LEXIS 116606,
2020 WL 3618987, at *10 (D. Md. July 2, 2020)(reducing life sentence
to 28 years of imprisonment); Brown v. United States, ELH-00-0100,
2020 U.S. Dist. LEXIS 45106, 2020 WL 1248950, at *10 (D. Md. Mar. 16,
2020)(reducing life sentence plus 30 years of imprisonment for
defendant who led a violent drug trafficking organization and
committed a murder in furtherance of the drug conspiracy).

In each of these above cited cases, the defendants were convicted
of murder(s) in relation to drug trafficking offenses. In each of these
cases, the judge determinded that the defendant's changed circumstances
warranted a sentence reduction under 18 U.S.C. §3582(c)(1)(A) even
though the defendant stood convicted of committing the most heinous
of crimes (murder) as well as a serious drug trafficking offense.
Yet none of the defendants in the above cited cases presented evidence
of the extraordinary rehabilitation that WYRICK presents here. (See
Decl. of WYRICK and exhibits). None possessed a doctorate degree
earned while serving a life sentence, much less two doctorate degrees
as WYRICK presents to the Court. None presented evidence of educational
efforts indicating thousands of hours of study in numerous fields of
study while incarcerated as WYRICK has done.

Although the Government will likely argue, as it did in WYRICK's
previous compassionate release motions, that WYRICK's CCE murder
conviction precludes his ability to be rehabilitated and, as such,
he cannot be granted any sentence reduction, Congress did not exempt
mandatory life sentences from (a) relief under the original language
in 18 U.S.C. §3582(c)(1)(A)(i) or (b) the modifications to the
exhaustion requirements of :3582(c)(1)(a). Likewise, no federal court

has limited compassionate release relief to cases where there is no mandatory life sentence. And in evaluating the §3553(a) factors, the Court is to consider "the most up-to-date picture" of WYRICK-i.e., how he appears at the time of resentencing-not as WYRICK was when he was sentenced over a quarter-century ago. Pepper v. United States, 562 U.S. 476, 492, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011)(citing United States v. Bryson, 229 F.3d 425, 426 (2d Cir. 2000)(per curiam) ("[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing")). Accordingly, the Court may resentence WYRICK to a 40-year term of imprisonment by exercising its discretion under §3582(c)(1)(A) to correct an unusually long sentence as the various above-indicated courts did even before the U.S. Sentencing Commission issued its Amendments to the Sentencing Guidelines.

### CCE and Conspiracy

There is another change in the law that is relevant to the Court's decision on whether extraordinary and compelling reasons exist to grant WYRICK's request for a sentence reduction. WYRICK's conviction for conspiracy was a lessor included offense of CCE and a defendant may not, therefore, stand convicted of both offenses because "the convictions punish twice for the same conduct." United States v. Holt, 969 F.2d 685, 687 (8th Cir. 1992). In Jeffers v. United States, 432 U.S. 137, 53 L. Ed. 2d 168, 97 S. Ct. 2207 (1977), the Supreme Court decided that conspiracy was a lesser included offense of CCE and that a defendant may not stand convicted of both offenses. Although WYRICK's trial counsel did not object to his indictment or conviction for both offenses, the fact that the law did not permit WYRICK to

-8-

stand convicted of both CCE and conspiracy further supports WYRICK's request for a sentence reduction because one of the two charges for which he was sentenced to serve a life-sentence should not have been included in his indictment in the first place.

### Drug-Quantity Finding Law Change

As indicated above, the new Guidelines permit courts to grant sentence reductions under Section 3582(c)(1)(A) on the basis of a change in the law since the time the defendant was sentenced if the change in the law creates a sentence disparity. Here, the law has changed as it pertains to WYRICK's conspiracy conviction. WYRICK was convicted of continuing criminal enterprise or "CCE" as well as conspiracy, the lessor included offense of CCE. His conspiracy conviction required the jury to make a drug-quantity finding based upon current law. The jury made no such finding. WYRICK was tried, convicted and sentenced before the Supreme Court clarified that any fact (other than a prior conviction) that increases the statutory minimum or maximum sentence must be treated as an element of the offense to be found by the jury beyond a reasonable doubt. Alleyne v. United States, 570 U.S. 99, 107-08, 133 S. Ct. 2151, 186 L. Ed. 2d 314 (2013); Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Following the usual practice at the time, the sentencing court made its own finding concerning WYRICK's offense involving an amount of marijuana corresponding to the highest offense level under the Sentencing Guidelines. This finding resulted in a mandatory life sentence for WYRICK which the Court imposed.

If sentenced today, the drug type and quantity determine the statutory sentencing range in cases charged under 21 U.S.C. §§841

and 846, with the statutory maximum being based on the amount a jury finds beyond a reasonable doubt. United States v. Aguayo-Delgado, 220 F.3d 926, 933 (8th Cir. 2000). The evidence adduced at trial shows WYRICK as a small time marijuana dealer. He was not the leader or organizer of the conspiracy. Even if he were the leader or organizer, in order to impose a life sentence for a drug conspiracy based upon drug quantity the Court would have to calculate the drugs attributed to WYRICK with the support of sufficient evidence. United States v. Serrano-Lopez, 366, F.3d 628, 638 (8th Cir. 2004) United States v. Johnston, 353 F.3d 617, 625 (8th Cir. 2003)(per curiam). This is true even where the district court's finding subjects a defendant to a lengthier mandatory minimum sentence than that which would be applicable based solely on the jury's quantity determination. United States v. Jenkins, 537 F.3d 894, 896-97 (8th Cir. 2008).

Under the new Guidelines the Court should consider reducing WYRICK's sentence in light of the changes in the law regarding the drug quantity findings.

B. Age at the Time of the Offense Conduct

In United States v. McCoy, 981 F.3d 271 (4th Cir. 2020), the Fourth Circuit repeatedly noted the defendants' youth as relevant factors in determining whether extraordinary and compelling circumstances existed. McCoy, 981 F.3d at 274, 279, 286, 288 (noting approvingly that the district courts conducted "individualized inquiries, basing relief...on such factors as the defendants' relative youth at the time of the offenses"). WYRICK was in his mid-20's at the time of the offenses of his conviction. "Youth matters at sentencing." Jones v. Mississippi, 141 S. Ct. 1307, 1314, 209 L. Ed. 2d 390 (2021). "[M]odern research also instructs that the prefrontal

cortex, the part of the brain that makes it possible to exercise good judgment when presented with difficult life situations, does not finish maturing until age 25." <u>Hirschfeld v. Bureau of Alcohol, Firearms, Tobacco & Explosives</u>, 5 F.4th 407, 476 )4th Cir. 2021), as amended (July 15, 2021), vacated as moot, 14 F.4th 322 (4th Cir. 2021) (Wynn, J., dissenting).

In <u>United States v. Ramsay</u>, one federal court specifically addressed the consideration of age within a similar context. There, the defendant was sentenced to life in prison following his conviction for murder in aid of racketeering. 538 F. Supp. 3d 407, 409 (S.D.N.Y. 2021). In <u>Ramsay</u>, the defendant and two others, all gang members and drug dealers, fired into a crowd killing two bystanders, Id. One of those bystanders was pregnant, and the baby died following an emergency delivery. Id. After passage of the First Step Act, the Southern District of New York, Judge Rakoff presiding, considered whether "an offender's youth, combined with society's evolving understanding of the adolescent brain, [can] constitute [extraordinary and compelling] circumstances?" Id. Following a thorough analysis of Supreme Court precedent, attributes of adolescents, including immaturity, susceptibility, salvageability, and dependence, and reasons why youth matters, the court found that an offender's youth could serve as an extraordinary and compelling circumstance and reduced the life sentence to a term of 360 months. Id. at 409, 415-423; see also U.S. Sentencing Commission, <u>Youthful Offenders in the Federal System</u>, at 5 (May 2017). <u>https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20170525_youthful-offenders.pdf</u> (last visited Aug. 4, 2023)("The inclusion of young offenders in the definition of youthful offenders is informed by recent case law

and neuroscience research in which there is a growing recognition that people may not gain full reasoning skills and abilities until they reach age 25 on average."). Accordingly, the Court should consider WYRICK's age at the time his offense conduct began, continuing through his arrest in determining whether to grant his request for a sentence reduction in light of his youthful age at the time of the offense and in consideration of the Guideline Amendments to §1B1.13 (paragraph 5) which states "OTHER REASONS."

The "OTHER REASONS" section of the Guidelines states: "The defendant presents any other circumstances or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." (emphasis added). The Sentencing Commission did not constrain the wide variety of grounds a defendant may present as extraordinary and compelling circumstances warranting a sentence reduction; it clearly broadened the circumstances and specifically defined certain of the circumstances that may be considered. In the Commentary to the newly amended Guidelines, the U.S. Sentencing Commission states: "The Commission considered but specifically rejected a requirement that 'other reasons' be similar in nature and consequence to the specified reasons. Rather they need be similar only in gravity, a requirement that inheres in the statutory requirement that they present extraordinary and compelling reasons for a sentence reduction." See 18 U.S.C. §3582(c)(1)(A)."

With the Commission's guidance concerning "other reasons" which

-12-

may present extraordinary and compelling circumstances warranting a sentence reduction, the Court is able to exercise its discretion by granting WYRICK's request for a sentence reduction to a term of years as opposed to the life-sentence which he is currently serving. He humbly requests that the Court consider his age at the time of the offenses in its determination of whether to grant him the relief requested.

C. COVID-19 Vulnerability in Prison Setting

WYRICK is well over 60 years old. He suffers from Chronic Obstructive Pulmonary Disease (COPD), hypertension, obesity and an enlarged prostate. Along with his age, these medical issues place him at a high risk category for severe illness or death upon his contracting COVID-19. See, CDC, OLDER ADULTS, available at: https://www.cdc.gov/coronavirus.2019-ncov/needextra-precautions/older adults.html; see also, People of Any Age with Underlying Medical Conditios, CDC, (https://bit.ly/3854NFY.

Although this Court made it clear that WYRICK's vulnerability to COVID-19, alone, does not warrant his immediate release, it remains to be determined if his continued vulnerability to COVID-19 combined with the additional circumstances he presents in his instant motion warrant his sentence reduction to a term of years. The amended U.S. Sentencing Commission Guidelines indicate that a sentence reduction may be warranted if the defendant presents circumstances indicating that "the defendant is housed at a correctional facility affected or at imminent risk of being affected by...an ongoing outbreak of infectious disease...or "due to personal health risk factors and

-13-

custodial status, the defendant is at increased risk of suffering severe medical complications or death as a result of exposure to the ongoing outbreak of infectious disease...." Id.

FCI Englewood, where WYRICK is housed and has been housed since 2023, no longer performs COVID-19 tests and refuses to test those inmates who request to be tested for the disease. As such, there is no way to determine the total amount of inmates who are positive for COVID-19 or those who should be quarantined. It remains unclear how WYRICK's previous infection with COVID-19 may affect him in the long term. That the BOP cannot adequately protect WYRICK from the disease is fairly obvious and cannot be reasonably disputed.

WYRICK has been vaccinated against further infection from COVID-19, however vaccination against COVID-19 has not been a bar to a sentence reduction in other cases. See e.g. United States v. Murakami, No. 1:17-cr-10346-DPW, ECF No. 80 (D. Mass. Feb. 25, 2021)(granting immediate release to hypertensive defendant who had received one dose of the vaccine, and would receive a second one prior to release); United States v. Sandoval, 3:14-cr-05105-BHS, ECF No. 617, 2021 U.S. Dist. LEXIS 32750 at *12 (W.D. Wash. Feb. 22, 2021)(granting early release notwithstanding vaccine dose, citing expert opinion that "efficacy of the vaccine in various subpopulations, such as immunosuppressed individuals, is still unknown"); United States v. Sweet, No. 2:07-CR-20369-VAR-VMM, ECF No. 42, 2021 U.S. Dist. LEXIS 69177 (E.D. Mich. Apr. 15, 2021)("[B]eing fully vaccinated decreases one's likelihood of severe COVID symptoms, [but] recent data reveals that the threat of severe illness or death from COVID-19, while dimished, is nevertheless real.").

-14-

In addition to WYRICK's continued vulnerability to COVID-19, the Court should consider the conditions of his confinement during the pandemic while he was locked inside a high security prison. Under normal circumstances the conditions of WYRICK's confinement would likely be a constitutional violation, however, during the pandemic the BOP was forced to take extraordinary measures to suppress the transmission of the disease in certain prisons. WYRICK was subjected to exceptionally harsh conditions as a result of his prison's security level. He was not permitted to leave his cell for nearly two years with the exception of a 10-minute shower every three days. He was subjected to minimal amounts of food--the prison's kitchen did not prepare hot food during the pandemic--in the form of a bag lunch of PBJ or bologna each day. Programming stopped altogether due to the lack of prisoner movement. Access to books was restricted as the prison library was closed during the pandemic at WYRICK's prison. As one court noted, "[f]or someone with [Jose] Rodriguez's health profile, the risk of suffering severe health consequences if he contracts COVID-19, coupled to the severe conditions imposed by the concomitant lockdowns and restrictions that are necessary to ensure [his] safety, means that 'the actual severity of [his] sentence as a result of the COVID-19 outbreak exceeds what the [sentencing] court anticipated." United States v. Mel, No. TDC-18-0571, 2020 U.S. Dist. LEXIS 74491, 2020 WL 2041674, at *3 (D. Md. Apr. 28, 2020). Several courts have granted sentence reductions in light of the harsh prison conditions that certain inmates were subjected to due to the pandemic in conjunction with other reasons. See e.g. United States v. Golding, 05-CR-538 (JSR), 2022 U.S. Dist. LEXIS 133940, 2022 WL 2985014, at *4

-15-

(S.D.N.Y. July 27, 2022)(noting that "extended periods without visitation and with severely restricted movement within prison," has "render[ed] the conditions of confinement far harsher and more punitive than the Court had anticipated." Id.

The Court may consider the fact that WYRICK has not and still is unable to have visitation with his family due to the pandemic and his father's ill health. The Court may consider the more punitive nature of WYRICK's incarceration including the lack of adequate food, inability to exercise, the torment of being locked in a box without escape for years on end during a national pandemic, and the lack of programming during the pandemic as a basis for granting WYRICK a reduced sentence. Again, he isn't asking for immediate release. That the conditions of WYRICK's confinement included such punitive circumstances should inform the Court's decision.

D. Rehabilitation Efforts

WYRICK's extensive rehabilitation in the face of a life-sentence is exemplary. The Guidelines amendments indicate that "rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." Section 1B1.13 at section (d). As the Supreme Court noted, "evidence of postsentencing rehabilitation may be highly relevant" in consideration of resentencing. Pepper v. United States, 562 U.S. 476, 491, 131 S. Ct. 1229, 1790 L. Ed. 2d 196 (2011).

WYRICK has completed well over a hundred BOP programs and obtained several degrees while incarcerated. (See Exhibit B) WYRICK's BOP Education Data Transcript). Although he has hundreds of classes

classes under his belt, he submits evidence of only a portion of them in consideration of the fact that the Court has several previous compassionate release motions in which the myriad educational courses have already been submitted. (See Exhibit C).

With the education WYRICK has obtained while incarcerated he is able to obtain immediate employment as a paralegal in the legal industry. He has a 2-year certificate from Blackstone Paralegal Studies, an accredited college located in Allentown, PA that educates students seeking employment as paralegals via distance learning. WYRICK is also able to obtain employment as a christian counselor due to his extensive studies which earned him several advanced degrees from a college and seminary. (See Exhibit C). He can make a positive contribution to society if given the opportunity to do do by the Court.

WYRICK exemplifies the maxim that "[a]s our jurisprudence recognizes, 'no man is beyond redemption.'" <u>Lawson v. United States Citizenship & Immigration Servs</u>., 795 F. Supp. 2d 283, 298 (S.D.N.Y. 2011)(quoting <u>Yuen Jung v. Barber</u>, 184 F.2d 491, 495 (9th Cir. 1950). In part due to WYRICK's extraordinary amount of program participation and education efforts, the Bureau of Prisons has scored him as a "MINIMUM" under its PATTERN risk assessment for recidivism in general and "MINIMUM" for his risk assessment for violence. As part of the First Step Act of 2018, Congress directed the BOP to implement reentry initiatives, including programming and programming incentives, good-time credit, and compassionate release opportunities. Congress further directed the Attorney General to develop a risk and needs assessment system, to appropriately direct programming and programming incentives

for Fiscal Year 2021 was 248 months, or just over 20 years. U.S.S.C., 2021 <u>Federal Sentencing Statistics</u>, Table 4 (2021), <u>https://www.ussc.gov/research/data-reports/geography/2021-federal-sentencing-statistics</u>. Given these statistics, a 40 year term of imprisonment underlines the seriousness of the offense and promotes respect for the law. As for the protection of the public, WYRICK's PATTERN score indicates that the Government itself agrees that there is a "MINIMUM" risk of his reoffending. (See Exhibit D, WYRICK's PATTERN score). Further, courts have relied upon the BOP's PATTERN system to determine a defendant's danger to the public in the context of a Section 3582(c)(1)(A) motion. See <u>United States v. Maher</u>, No. 2:04-cr-00093-GZS, 2020 U.S. Dist. LEXIS 168001, at *5 (D. Me. Sept. 15, 2020). Although it is true that WYRICK's crime was violent and indicates he was a danger to his perceived enemy in the CCE conspiracy, however that was three decades ago. Section 3553(a)'s assessment is made based upon the defendant as he stands today, not thirty years ago. If a conviction for CCE in which a life sentence was imposed due to the mandatory Guidelines meant that the defendant could never be rehabilitated, then courts would automatically bar any defendant with a CCE murder conviction from ever obtaining compassionate release under Section 3582(c)(1)(A). Yet this is not the case. Courts grant sentence reductions to those with CCE convictions because the defendant(s) no longer pose a threat to society even in light of the CCE conviction. In short, the conviction itself does not bar relief or deem a person forever a danger to the public.

Two cases illustrate this point and WYRICK asks the Court to take judicial notice of these two cases because the facts of these

two cases are nearly identical to the circumstances presented in his instant request for a sentence reduction. (See ATTACHMENT 1 and ATTACHMENT 2, U.S. v. Rocky Freeman and U.S. v. Shaheem Johnson). In both of these cases the defendants participated in a drug conspiracy which resulted in multiple deaths attributed to each defendant. In both cases the court granted the defendant's request for a sentence reduction in light of changed circumstances and the fact that the defendant's exhibited extraordinary rehabilitation even though they were each serving a life-sentence for CCE murder.

As for the fourth Section 3553(a) Factor, the Sentencing Guidelines range and the statutory minimum and maximum, this too indicates that a sentence reduction is appropriate. WYRICK's Guidelines range has been amended by the U.S. Sentencing Commission. He no longer would be subjected to a mandatory minimum and, in addition, under Section 841(b)(1)(A), WYRICK's minimum Guideline range has been lowered since the time of his conviction for drug conspiracy involving marijuana. An additional consideration is the fact that marijuana is legal in over half of the states in the USA. It is likely going to be descheduled in the very near future. Courts no longer impose life sentences for marijuana distribution cases. CCE hasn't been charged in this district for over 20 years and, as stated above, WYRICK's conspiracy charge is the lessor included offense of CCE and, under current law, would not be legally charged by the government anymore if the government pursued a CCE count in the same indictment as the conspiracy.

Finally, the fifth Section 3553(a) factor also supports the sentence reduction WYRICK requests here. The sentence should reflect

Guidelines scheme in place at the time of WYRICK's sentencing.

With regard to the first factor, as noted in WYRICK's declaration and exhibits (attached), he has made extraordinary efforts at his rehabilitation since his incarceration and "evidence of postsentencing rehabilitation may be highly relevant." Pepper v. United States, 562 U.S. 476, 491, 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011). He presents an impressive education and vocational record, lack of **any** disciplinary infractions in the **29 years of incarceration** in the BOP, and glowing letters (Exhibit E) from people who know who he is today as a changed and reformed man. He also has a strong support network and a viable home plan (see Wyrick Decl.) whereas his family has agreed to permit him to stay with him upon release for as long as he needs to transition back into the community. These factors weigh strongly in favor of a sentence reduction.

In regard to the second factor, which requires in part that the sentence "reflect the seriousness of the offense,""promote respect for the law," and "provide just punishment for the offense," see 18 U.S.C. §3553(a)(2)(A), WYRICK's crime was undoubtedly very serious and brutal, and these considerations certainly weigh in favor of a substantial sentence. However, Section 3553(a) also requires the Court to consider whether the sentence "protect[s] the public from futher crimes of the defendant." 18 U.S.C. §3553(a)(2)(C). WYRICK's remorse (see WYRICK Decl. and Exhibit F) and extensive rehabilitation are relevant to this factor and counsel in favor of a sentence reduction. It cannot reasonably be stated that the 40 year sentence which WYRICK requests does not promote respect for the law or provide just punishment for the offense when, across the nation, the average sentence for murder

by "determin[ing] the recidivism risk of each prisoner" and classifying "each prisoner as having minimum, low, medium, or high risk for recidivism." 18 U.S.C. §3632(a). The BOP responded to this directive with its "PATTERN" scoring system. PATTERN is the risk and needs assessments system that Congress directed the BOP to develop. Under the PATTERN system, WYRICK is deemed the lowest possible risk assessment for recidivism for both "violent recidivism" and "general recidivism" risk. (See Exhibit D, WYRICK's PATTERN scoring). Based upon the BOP's assessment of WYRICK, he has been rehabilitated. The Court should consider his rehabilitation as instructed by the Supreme Court in Pepper.

## V. Section 3553(a) Sentencing Factors

The sentencing factors listed in 18 U.S.C. §3553(a) support the reduction in sentence that WYRICK requests here. These factors include: (1) the nature and circumstances of the offense and history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the rule of law, to provide just punishment, to adequately deter criminal conduct, to provide the defendant with the needed educational or vocational training or treatment, and to protect the public; (3) the kinds of sentences available; (4) the Sentencing Guidelines range and the statutory minimum and maximum; and (5) the need to avoid sentencing disparities between similarly situated defendants.

At the time of sentencing, the sentencing court determined that a life sentence was warranted due to the fact that it did not have the ability to impose any other sentence in light of the mandatory

"the need to avoid sentencing disparities between similarly situated defendants." As indicated above and as evidenced in the two cases (ATTACHMENTS 1 & 2), WYRICK's proposed sentence of 40 years of incarceration would avoid the sentencing disparity that currently exists with his life-sentence. Similarly situated defendants who are convicted for conspiracy or CCE murder are not sentenced to life anymore. Similarly situated defendants convicted of murder in conjunction with drug distribution conspiracies are, on average, sentenced to a term of approximately 248 months. See Federal Sentencing Statistics, supra.

Aside from the two cases (ATTACHMENTS 1 & 2) that WYRICK asks the Court to take judicial notice of, there are several other cases which evidence a gross sentencing disparity between the sentence that WYRICK is serving and the sentences courts are currently imposing for similarly situated defendants. See e.g. United States v. Morris, No. 3:99-cr-264, 2022 U.S. Dist. LEXIS 153822, 2022 WL 3703201 (D. Conn. Aug. 26, 2022)(granting compassionate release and reducing sentence to 360 months for defendant who had served 23 years and was convicted under, inter alia, §1959(a)(1) and sentenced to four life sentences); United States v. Gray, No. CCB-95-364, 2021 U.S. Dist. LEXIS 88855, 2021 WL 1856649 (D. Md. May 10, 2021)(granting compassionate release and reducting sentence to time served for defendant who had served 27 years and was convicted under, inter alia, §1959(a)(1) and sentenced to life); United States v. Perez, No. 3:02-cr-7, 2021 U.S. Dist. LEXIS 41040, 2021 WL 837425)(D. Conn. Mar. 4, 2021)(granting compassionate release and reducing sentence to time served for defendant who had served 23 years and been convicted under, inter alia,

§1959(a)(1) and sentenced to three life sentences); United States v. Rios, No. 3:94-cr-112, 2020 U.S. Dist. LEXIS 230074, 2020 WL 7246440 (D. Conn. Dec. 8, 2020)(granting compassionate release and reducing sentence to 360 months for defendant who had served 25 years and was convicted under, inter alia, §1959(a)(1) and sentenced to three life sentences). All of these cases evidence a gross sentencing disparity between WYRICK and similarly situated defendants. Accordingly, the amended Guidelines and Section 3553(a)(6) support the 40 year sentence which WYRICK requests here.

### VI. Conclusion

Defendant Wyrick humbly requests that the Court consider the arguments made in his instant pleading, his sworn declaration & exhibits, and his current circumstances in determining whether to grant his request for a sentence reduction to a term of 40 years. As the Supreme Court noted, "exemplary postsentencing conduct may be taken as the most accurate indicator of '[a defendant's] present purposes and tendencies and significantly to suggest the period of restraint and the kind of discipline that ought to be imposed upon him.'" Pepper, 562, U.S. at 492-93 (quoting Pennsylvania ex rel. Sullivan v. Ashe, 302 U.S. 51, 55, 58 S. Ct. 59, 82 L. Ed. 43 (1937). WYRICK's postsentencing conduct should be given much weight in the Court's determination of whether to grant him the relief requested.

In addition, another major factor that the Court should deem highly relevant is WYRICK's old age (he is well over 60 although his crime was committed during his youth). The National Institute of Justice ("NIJ") notes that age is a powerful factor in deterring crime and that criminals naturally age out of crime. Office of Justice Programs at the NIJ, Five Things About Deterrence, United

States Department of Justice (May 2016)(citing Robert J. Sampson, John H. Laub, and E.P. Eggleston, <u>On the Robustness and Validity of Groups</u>, 20 Journal of Quantitative Criminology 1, 37-42)). The Sentencing Commission's research also indicates that one of the two factors most closely associated with recidivism rates (criminal history and <u>age</u>), age, evidence that the older the age of the offender, the lower his or her recidivism rate. See U.S.S.C., <u>Recidivism Among Federal Offenders</u>, A Comprehensive Overview, Parts II & IV (March 2016).

These statistics are relevant to the Court's decision here because each of WYRICK's previously requested sentence reduction motions were denied (See ATTACHMENT 3 and ATTACHMENT 4, the Court's orders issued on 3/21/2023 and 7/15/2021 respectively) on the basis of "the danger his release woudl present to the community," amongst other Section 3553(a) factors. WYRICK is no longer a danger to the community at this time and he respectfully asks that the Court consider the totality of his arguments raised here and find that his sentence reduction to 40 years is warranted based upon his <u>current</u> circumstances.

Respectfully submitted,

*Keven L. Wyrich*

Keven L. Wyrick
Prisoner No. 08724-045
FCI Englewood LOW
9595 W. Quincy Ave.
Littleton, Colorado 80123
Appearing Pro Se

DECLARATION OF KEVEN WYRICK

Keven Wyrick states:

1. I am the defendant in this case. I submit this declaration in support of my attached motion for a sentence reduction.

2. Exhibit A is a copy of the request that I submitted to the warden of my prison. I have not received any response from the warden as of December 12, 2023. I have already exhausted my available administrative remedies concerning this motion in the past at my other prison, however, in an abundance of caution I sent my current warden yet another request.

3. Exhibit B is a copy of my educational transcripts which I obtained from the Education Department staff at FCI Englewood (LOW) where I am currently incarcerated and participating in the residential veteran's program called "VETS". I have been in this program since April 2023 and will complete this program next year. As indicated by my prison educational transcripts, I have completed over 6,000 hours of educational programs while incarcerated in an attempt to rehabilitate myself.

4. Exhibit C is a copy of the degrees that I obtained from college and seminary along with a portion of the certificates which I've earned during my incarceration. My father has the original college degrees and certificates as I've sent them home to avoid damaging them while being transferred from my last prison to the one which I am at now (FCI Englewood LOW). I obtained these degrees and participated in my extensive education in hopes of one day being able to help people by offering my christian counseling services.

5. Exhibit D is a copy of my PATTERN score which my case manager provided to me. As indicated on the document, I am at a "MINIMUM"

recidivism risk level. My risk level has not changed since I obtained this document. I am still a minimum risk level for both the "general recidivism risk" as well as the "violent recidivism risk" under the BOP's PATTERN system.

6. Exhibit E includes numerous letters to the Court concerning the person I am today according to those who know me in my family and the people who are around me in prison.

7. Exhibit F includes my own letter to the Court concerning my remorse for my actions nearly 30 years ago. Not a day goes by that I do not think about what I did and the harm that I caused. I have changed in the last 30 years and am not the same person who committed those crimes. It is my dream to reenter society to make a difference, a positive influence on my family, friends, and the people in the community which I engage each day. I don't want to die in prison and leave a negative legacy. I beg you to give me a chance to prove my worth as a person and show everyone who I am today, my positivity, and my new belief system. A 40 year sentence will permit me to leave my incarceration at around 70 years of age and give me at least another decate in which to prove myself to the Court, to society, and to my family.

8. Exhibit G is a collection of letters and memoranda from BOP staff regarding me and my work ethic as well as my faith.

9. I've been working for UNICOR (prison industries) for 13 years at different institutions throughout the Bureau of Prisons. I have maintained employment throughout the term of my incarceration with positive work reviews. I can obtain employment via UNICOR outside of prison if necessary based upon my job skills and longevity.

-2-

I declare that the foregoing is true and correct under penalty of perjury.

Executed this 12th day of December 2023 at Littleton, Colorado.

KEVEN WYRICK
Prisoner No. 08724045
FCI Englewood
9595 W. Quincy Ave.
Littleton, Colorado 80123