**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 94-00194-12-CR-W-GAF |
| KEVEN L. WYRICK, | |
| Defendant. | |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO
DEFENDANT'S FOURTH MOTION TO REDUCE SENTENCE
PURSUANT 18 U.S.C. §3582(c)(1)(A)(i) – COMPASSIONATE RELEASE**

The United States of America, through Teresa A. Moore, United States Attorney for the Western District of Missouri, and the undersigned attorney, provides the following response in opposition to defendant's Fourth motion for compassionate release. The defendant seeks to have his life sentence for conspiracy to distribute marijuana and a continuing criminal enterprise resulting in death reduced to 40 years based upon extraordinary and compelling reasons. The defendant argues the Amended Guidelines under Section 1B1.13(b)(6) should be considered in making this new judgment to reduce his sentence.  (D.E. 1133.) The Government opposes this request and asks the Court to deny the defendant's motion as he has not demonstrated any additional change in circumstance to his previous three motions.

**I.  Procedural History**

On May 25, 1995, defendant was charged with one count of conspiracy to distribute marijuana, one count of engaging in a continuing criminal enterprise resulting in death and one count of conspiracy to distribute marijuana resulting in death. On September 24, 1996, trial began and ended on November 1, 1996 where defendant was convicted of counts two and three.  On May

22, 1997, defendant was sentenced to life imprisonment. Based on the information made available on the Bureau of Prisons Inmate Locator, the defendant does not have a release date. (*See* https://www.bop.gov/inmateloc/.)

On August 31, 2020, the defendant filed a motion for compassionate release and asserts that the current situation regarding the coronavirus (COVID-19) places the defendant at risk if he remains in custody. (D.E. 1092.) On September 29, 2020 the government filed its opposition to said motion. (D.E.1098.)

On October 21, 2020 this Court entered an Order denying defendant's initial motion for compassionate release. (D.E.1102.)

Defendant Wyrick appealed the denial and a mandate was issued after a judgement was filed affirming the district court order. (D.E. 1109.)

On June 1, 2021, Defendant Wyrick filed his second motion for compassionate release (D.E. 1110.) and this court denied it on July 15, 2021 (D.E. 1115).

On August 16, 2021, Defendant filed another notice of appeal. (D.E. 1117). A mandate was issued after a judgement was filed affirming the district court order on September 15, 2021. (D.E. 1121.)

On January 31, 2023, defendant filed this third motion for compassionate release (D.E. 1122.) and this Court denied it on March 21, 2023 (D.E. 1127.)

On December 19, 2023, Defendant filed this motion seeking relief again. (D.E. 1133.)

## II. <u>Statement on New Guideline Amendment</u>

The Sentencing Reform Act of 1984, Pub. L. No. 98-473, Tit. II, Ch. II, 98 Stat. 1987 (18 U.S.C. § 3551 et seq.), "overhaul[ed] federal sentencing practices." *Tapia v. United States*, 564 U.S. 319, 325 (2011). To make prison terms more determinate, Congress established the

Sentencing Commission as an independent agency in the Judicial Branch and "authorized it to promulgate Sentencing Guidelines and to issue policy statements." *Dillon v. United States*, 560 U.S. 817, 820 (2010); see 28 U.S.C. §§ 991, 994(a). "The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system," and Congress directed the Commission to "eliminate unwarranted disparities in punishment of similar defendants who commit similar crimes." *Neal v. United States*, 516 U.S. 284, 290-91 (1996).

Congress also abolished the practice of federal parole, specifying that a "court may not modify a term of imprisonment once it has been imposed" except in certain enumerated circumstances. 18 U.S.C. § 3582(c); see *Tapia*, 564 U.S. at 325. One of those circumstances, set forth in 18 U.S.C. § 3582(c)(1)(A) (and commonly referred to as "compassionate release"), authorizes a court to "reduce [a] term of imprisonment . . . , after considering the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable, if it finds," as relevant here, that "extraordinary and compelling reasons warrant such a reduction" and that "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." As originally enacted, Section 3582(c)(1)(A) authorized such reductions only "upon motion of the Director of the Bureau of Prisons" (BOP).[1] Sentencing Reform Act § 212(a)(2), 98 Stat. 1998.

Congress directed the Sentencing Commission to promulgate "general policy statements regarding . . . the appropriate use of . . . the sentence modification provisions set forth in [Section]

---

[1] Under the system of federal parole, 18 U.S.C. § 4205(g) provided the Bureau of Prisons with authority to move "[a]t any time" for the sentencing court to "reduce any minimum term [of imprisonment] to the time the defendant has served." 18 U.S.C. § 4205(g) (repealed). BOP regulations explained that the Bureau generally used that authority "only in particularly meritorious or unusual circumstances which could not reasonably have been foreseen by the court at the time of sentencing," including where "there is an extraordinary change in an inmate's personal or family situation or if an inmate becomes severely ill." 45 Fed. Reg. 23,364, 23,366 (Apr. 4, 1980). As the Senate Report accompanying the Sentencing Reform Act explains, Section 3582(c)(1)(A) was intended to be "similar to the authority" afforded to the BOP under 18 U.S.C. § 4205(g). S. Rep. No. 98-225, at 121 n.298 (1983).

3

3582(c)." 28 U.S.C. § 994(a)(2)(C). Congress instructed the Commission, in promulgating policy statements regarding Section 3582(c)(1)(A), to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). Congress specified that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*

In 2006, the Commission promulgated Sentencing Guidelines § 1B1.13, p.s. As amended in 2016, the policy statement described four categories of reasons that should be considered extraordinary and compelling: "Medical Condition of the Defendant," "Age of the Defendant," "Family Circumstances," and "Other Reasons" "determined by the Director of the Bureau of Prisons" to be "extraordinary and compelling" "other than, or in combination with," the reasons described in the other three categories. Sentencing Guidelines App. C Supp., Amend. 799 (Nov. 1, 2016).

In the First Step Act of 2018, Congress amended Section 3582(c)(1)(A) to allow defendants, as well as the BOP itself, to file motions for a sentence reduction. See Pub. L. No. 115-391, Tit. VI, § 603(b), 132 Stat. 5194, 5239. As modified, Section 3582(c)(1)(A) now states:

the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . , after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a

4

reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphasis added).

Shortly after the First Step Act's enactment, the Sentencing Commission lost a quorum of voting members, and remained without a quorum for more than three years. See 88 Fed. Reg. 28,254, 28,256 (May 3, 2023). The Commission thus did not immediately amend the policy statement to account for the First Step Act's procedural change. In the intervening years, nearly every circuit held that the existing policy statement's description of what should be considered "extraordinary and compelling" reasons for a sentence reduction was not applicable to defendant-filed motions. See *United States v. Ruvalcaba*, 26 F.4th 14, 21 (1st Cir. 2022) (collecting cases). But see *United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021). As a result, and in the absence of a binding policy statement, the courts of appeals were obliged to construe the plain meaning of the phrase "extraordinary and compelling reasons" as used in Section 3582(c)(1)(A)(i). The majority of circuits to consider the question—including this circuit—determined that a change in the law, whether considered alone or in combination with other factors, cannot constitute an "extraordinary and compelling" reason for a sentence reduction. See *United States v. Andrews*, 12 F.4th 255, 261 (3d Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v. Thacker*, 4 F.4th 569, 571 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 582, 585-86 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198-1200 (D.C. Cir. 2022); see also *United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. June 22, 2023) (per curiam) (unpublished). Four circuits, in contrast, have taken the view that a change in the law can form part of an individualized assessment of whether to grant a sentence

5

reduction, but only in combination with other case-specific factors. *Ruvalcaba*, 26 F.4th at 28; *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. Chen*, 48 F.4th 1092, 1097-98 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047-48 (10th Cir. 2021).

In 2022, the Sentencing Commission regained a quorum, and after public notice and comment voted on April 5, 2023, to promulgate amendments to the Guidelines Manual, including to Section 1B1.13's policy statement. 88 Fed. Reg. 28,254, 28,254-28,281 (May 3, 2023); see also Sentencing Commission Public Meeting Tr. 27-82 (Apr. 5, 2023) ("4/5/23 Tr.").[2] The amendments to Section 1B1.13 render the policy statement applicable to defendant-filed motions. As relevant here, the amendments also purport to allow, with certain limitations, consideration of changes in law—including ones Congress has chosen not to make retroactive—when determining whether a defendant has presented an extraordinary and compelling reason for a sentence reduction. That change is reflected in new subsections (b)(6) and (c), which provide:

(6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

---

[2] https://www.ussc.gov/sites/default/files/pdf/amendment-process/public-hearings-and-meetings/20230405/20230405_transcript.pdf.

(c) Limitation on Changes in Law.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

88 Fed. Reg. at 28,255; see U.S.S.G. § 1B1.13(b)(6), (c).

The Commission divided 4-3 on whether to promulgate the amendments to Section 1B1.13. See 4/5/23 Tr. 81-82. The dissenting Commissioners explained that, in their view, the policy statement "goes further than the Commission's legal authority extends," and the Commission had made "a seismic structural change to our criminal justice system without congressional authorization or directive." *Id*. at 60 (Commissioner Wong, delivering joint statement). In particular, the Commission's decision to allow nonretroactive changes in law to establish a basis for a sentence reduction "supplants Congress's legislative role" and would authorize courts "to revisit duly imposed criminal sentences at the ten-year mark based on intervening legal developments that Congress did not wish to make retroactive." *Id*. at 60-61. "The separation of powers problem" with that result, the dissenting Commissioners explained, "should be apparent," as "[i]t is not the Commission's role to countermand Congress's legislative judgments." *Id*. at 61.

The Commission submitted its proposed Guidelines amendments to Congress on April 27, 2023. Because Congress did not act to modify or disapprove of the amendments, they became effective on November 1, 2023. 88 Fed. Reg. at 28,254; see 28 U.S.C. § 994(p).

7

Here, defendant is now asking not for immediate release, but for a sentence modification to 40 years or 480 months.

### III. <u>Argument</u>

In Section 3582(c)(1)(A)(i), Congress enacted a narrow exception to the general rule that a federal court "may not modify a term of imprisonment once it has been imposed," permitting a court to reduce a term of imprisonment where it finds that "extraordinary and compelling reasons" warrant a reduction. Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons," 28 U.S.C. § 994(t), but the Commission's authority necessarily is limited by Congress's clear directive that any such reasons be both extraordinary and compelling. Nonretroactive changes in sentencing law are neither. To the contrary, "in federal sentencing the ordinary practice is to apply new penalties to defendants not yet sentenced, while withholding that change from defendants already sentenced." *Dorsey v. United States*, 567 U.S. 260, 280 (2012).

To support his motion for a sentence reduction, Defendant invokes subsection (b)(6) of the policy statement, in which the Sentencing Commission purported to interpret Section 3582(c)(1)(A)(i) to permit changes in law to establish "extraordinary and compelling" reasons for a sentence reduction in some circumstances. Although Congress delegated broad authority to the Sentencing Commission, subsection (b)(6) is contrary to the statute's text, structure, and purpose, and therefore is invalid. Even if it were valid, Defendant could not establish that the sentence he received is unusually long or grossly disparate to the sentence he might receive today. And in all events, the Section 3553(a) factors independently preclude relief. This court should deny Defendant's motion.

8

**A. By Its Own Terms, Subsection (b)(6) Does Not Apply To Defendant**

As a threshold matter, because Defendant does not meet subsection (b)(6)'s criteria by its own terms, he could not establish extraordinary and compelling reasons for a sentence reduction based on a change in law even if the Sentencing Commission acted within its statutory authority when promulgating that provision.

Section 3582(c)(1)(A) specifically instructs that any sentence reduction ordered by a court be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). An applicable policy statement is binding on the court, and the court therefore may not grant a sentence reduction outside of the circumstances the Commission has detailed in Section 1B1.13. See *Dillon*, 560 U.S. at 826-27 (interpreting identical language as used in Section 3582(c)(2)). In subsection (c) of the policy statement, moreover, the Commission specifically instructed that "[e]xcept as provided in subsection (b)(6), a change in the law . . . shall not be considered for purposes of determining whether an extraordinary and compelling reasons exists." U.S.S.G. § 1B1.13(c) (emphasis added). Because Defendant does not meet subsection (b)(6)'s criteria, he accordingly could not invoke that subsection in support of his sentence reduction motion, even assuming that it were valid.

Specifically, amendment to the Guidelines Manual: Defendant seeks a sentence reduction based on the Sentencing Commission's amendment in 2023 to Section 1B1.13. Subsections (b)(6) and (c), however, expressly exclude reliance on "an amendment to the Guidelines Manual that has not been made retroactive" in establishing extraordinary and compelling reasons for a sentence reduction. U.S.S.G. § 1B1.13(b)(6), (c); see 88 Fed. Reg. at 28,259 (explaining that the provisions "exclude[ ] non-retroactive changes to the guidelines from

9

consideration as extraordinary and compelling reasons"). Instead, Section 3582(c)(2) and the Commission's policy statement applicable to retroactive guidelines amendments, U.S.S.G. § 1B1.10, provide the exclusive avenue for a defendant to seek a sentence reduction under a Guidelines amendment the Commission makes retroactive. See 18 U.S.C. § 3582(c)(2).

Excluding challenges to the legal validity of a conviction or sentence based on intervening judicial decisions, moreover, is consistent with the substantial weight of authority in the courts of appeals. Nearly every circuit to have considered the question has held that a claimed error in a defendant's judgment cannot provide extraordinary and compelling reasons for a sentence reduction, and that a defendant cannot resort to Section 3582(c)(1)(A)(i) to circumvent the normal process of direct and collateral review. See, e.g., *United States v. Amato*, 48 F.4th 61, 65 (2d Cir. 2022) (per curiam); *United States v. Henderson*, 858 F. App'x 466, 469 (3d Cir. 2021) (per curiam) (unpublished); *United States v. Ferguson*, 55 F.4th 262, 270-72 (4th Cir. 2022); *United States v. Escajeda*, 58 F.4th 184, 188 (5th Cir. 2023); *United States v. West*, 70 F.4th 341, 346-47 (6th Cir. 2023); *United States v. Martin*, 21 F.4th 944, 945-46 (7th Cir. 2021) (per curiam*); Crandall*, 25 F.4th at 586 (8th Cir.); *United States v. Wesley*, 60 F.4th 1277, 1283-86 (10th Cir. 2023); *Jenkins*, 50 F.4th at 1200-04 (D.C. Cir.); see also *United States v. Roper*, 72 F.4th 1097, 1102 (9th Cir. 2023) (noting issue, but explaining that the defendant there "does not claim that his original sentence violated the Constitution or federal law"). But see *United States v. Trenkler*, 47 F.4th 42, 47-49 (1st Cir. 2022).

**B. The Sentencing Commission Exceeded Its Congressionally-Delegated Authority In Promulgating Subsection (b)(6)**

**1. In Exercising Its Authority, The Commission Cannot Act Contrary To The Statute**

10

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for [a] sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).[3] Such a delegation of authority, however, "is not unlimited." *Batterton v. Francis*, 432 U.S. 416, 428 (1977). Even when reached through an exercise of delegated authority, an agency's interpretation of a statute must be set aside if the agency's interpretation is not "reasonable." *Mayo Found. for Med. Educ. & Research v. United States*, 562 U.S. 44, 58 (2011) (internal quotation marks omitted); *see Batterton*, 432 U.S. at 428. An agency cannot adopt an impermissible reading of the statute—*i.e.*, a reading that exceeds the gap left by Congress. *See Mayo Found.*, 562 U.S. at 53-58; *Batterton*, 432 U.S. at 428.

The Sentencing Commission in particular "was not granted unbounded discretion," and as the Supreme Court has explained, "[b]road as" the Commission's "discretion may be," it "must bow to the specific directives of Congress." *United States v. LaBonte*, 520 U.S. 751, 753, 757 (1997); *cf. Mistretta v. United States*, 488 U.S. 361, 379 (1989) (reasoning that the discretion vested in the Commission does not violate the nondelegation doctrine because the Sentencing Reform Act "sets forth more than merely an 'intelligible principle' or minimal standards" to guide that discretion). In the Sentencing Reform Act, itself, Congress directed the Commission to ensure that its guidelines and policy statements remain "consistent with all pertinent provisions

---

[3] The Supreme Court has granted certiorari in *Loper Bright Enterprises v. Raimondo*, No. 22-451, to consider whether the Court's decision in *Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837 (1984), should be overruled. Because *Chevron* concerns the deference owed to an agency when Congress has only implicitly delegated interpretive authority, *Chevron*, 467 U.S. at 844, the Court's resolution of *Loper* will not affect the deference due when Congress has *expressly* identified a gap for an agency to fill. *See United States v. Mead Corp.*, 533 U.S. 218, 228-29 (2001) (distinguishing among express and implicit delegation); *see also Cuozzo Speed Techs., LLC v. Lee*, 579 U.S. 261, 286 (2016) (Thomas, J., concurring) (explaining that an "express and clear conferral of authority" to an agency does not implicate *Chevron*).

11

of any Federal statute." 28 U.S.C. § 994(a). And Congress authorized the Commission only to "make *recommendations to Congress* concerning modification or enactment of statutes relating to sentencing." *Id.* § 995(a)(20) (emphasis added).

## 2. Subsection (b)(6) Conflicts With Section 3582(c)(1)(A)'s Plain Text, Context, And Purpose—As The Court Of Appeals Has Held

Section 3582(c)(1)(A) provides an "except[ion]" to the overarching principle of federal sentencing law that a "federal court generally 'may not modify a term of imprisonment once it has been imposed.'" *Dillon*, 560 U.S. at 819 (quoting 18 U.S.C. § 3582(c)). Congress plainly instructed that any reason sufficient to overcome that general principle must be "extraordinary and compelling." 18 U.S.C. § 3582(c)(1)(A)(i). No reasonable interpretation of that phrase's text, particularly when considered in light of the statute's structure and purpose, can encompass nonretroactive or intervening changes in law. The court of appeals has already held as much, determining that Section 3582(c)(1)(A)(i)'s clear meaning excludes intervening developments in sentencing law from constituting "extraordinary and compelling" reasons for a sentence reduction, whether considered alone or in connection with other factors and circumstances. *See* [4]. The Commission's interpretation of the statute as set forth in subsection (b)(6) is unreasonable and therefore invalid. *Mayo Found.*, 562 U.S. at 58; *see LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

---

[4] United States v. Andrews, 12 F.4th 255, 260-61 (3d Cir. 2021); United States v. McMaryion, No. 21-50450, 2023 WL 4118015, at *2 (5th Cir. 2023) (unpublished); United States v. McCall, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); United States v. Thacker, 4 F.4th 569, 571 (7th Cir. 2021); United States v. Crandall, 25 F.4th 582, 585-86 (8th Cir. 2022); United States v. Jenkins, 50 F.4th 1185, 1198-1200 (D.C. Cir. 2022).*JJ*

12

The court of appeals has already construed Section 3582(c)(1)(A)(i) to preclude a change in law from qualifying as an extraordinary and compelling reason for a sentence reduction. The court did so, moreover, based on its construction of the statute's clear meaning. The Sentencing Commission's policy statement provides no basis to reconsider that determination.

"[T]he Commission does not have the authority to amend the statute" or "to override the statute as [the court of appeals] has construed it."[5] *Neal*, 516 U.S. at 290, 294; *see United States v. Koons*, 850 F.3d 973, 979 (8th Cir. 2017) (Sentencing Commission cannot "overrule circuit precedent interpreting a *statutory* provision" (quoting *United States v. Williams*, 808 F.3d 253, 266 (4th Cir. 2015) (Traxler, C.J., dissenting))). The court of appeals' determination in *Koons* remains binding in this circuit. Nor does (or could) the Commission's policy statement provide a basis to reconsider that precedent, because "a precedent holding a statute to be unambiguous forecloses a contrary agency construction." *Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 984 (2005); *see Lechmere, Inc. v. NLRB*, 502 U.S. 527, 536-37 (1992) ("Once we have determined a statute's clear meaning, we adhere to that determination under the doctrine of *stare decisis*, and we judge an agency's later interpretation of the statute against our prior determination of the statute's meaning." (internal quotation marks omitted)).

---

[5] Because the court of appeals did not suggest that Section 3582(c)(1)(A)(i)'s text is ambiguous, it also is unnecessary for this Court to "decide what, if any, deference [would be] owed the Commission in order to reject its alleged contrary interpretation." *Neal*, 516 U.S. at 295; *see also DePierre v. United States*, 564 U.S. 70, 87 (2011) (explaining that the Supreme Court has not addressed what deference is owed to the Commission's interpretations of a statute); *LaBonte*, 520 U.S. at 762 n.6 ("Inasmuch as we find the statute at issue here unambiguous, we need not decide whether the [Sentencing] Commission is owed deference under *Chevron*.").

13

The Supreme Court has not hesitated to reject the Sentencing Commission's purported interpretation of a statute where inconsistent with plain statutory language—including language the Court had previously authoritatively construed. In *Neal*, for example, the Court held that Guidelines commentary addressing the method for calculating the weight of LSD did not alter the Court's interpretation of the phrase "a mixture or substance containing a detectable amount" of certain drugs as used in 21 U.S.C. § 841(b). *Neal*, 516 U.S. at 287-89 (describing Court's prior decision in *Chapman v. United States*, 500 U.S. 453 (1991)). Although the Court considered it "doubtful" the Commission intended to "displace" the Court's interpretation of Section 841(b), the Court nevertheless explained that if the commentary was intended to do so, the Commission's action "cannot be squared" with the Court's prior determination. *Id.* at 293-94. "Once we have determined a statute's meaning," the Court explained, "we adhere to our ruling under the doctrine of *stare decisis*, and we assess an agency's later interpretation of the statute against that settled law." *Id.* at 295; *see also LaBonte*, 520 U.S. at 753 (invalidating Guidelines amendment where "the Commission's interpretation is inconsistent with [the statute's] plain language").

The same result is warranted here. The court of appeals directly construed, as a statutory matter, the phrase "extraordinary and compelling" as used in Section 3582(c)(1)(A). The Sentencing Commission "does not have the authority" to "override" that authoritative construction of the statute's clear meaning. *Neal*, 516 U.S. at 290, 294.

This circuit's precedent, in any event, is correct. To justify a sentence reduction under Section 3582(c)(1)(A)(i), a proffered reason must be both "extraordinary" and "compelling." As a matter of plain language, an intervening change in the law is neither.

14

Section 3582(c)(1)(A)(i)'s context further confirms that the term "extraordinary and compelling" cannot encompass intervening changes in law.

Defendant contends that, beyond specifying that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," 28 U.S.C. § 994(t), Congress placed no textual limit on the reasons that might warrant a sentence reduction. That contention disregards Congress's express textual requirement that any reason for a sentence reduction be both "extraordinary and compelling," 18 U.S.C. § 3582(c)(1)(A)(i). As explained, an intervening change is neither under those terms' ordinary meaning, and by using that phrase Congress did place clear textual limits on the reasons the Commission could validly identify as warranting a sentence reduction.

"Statutory construction," moreover, "is a holistic endeavor" and a provision "is often clarified by the remainder of the statutory scheme." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 371 (1988). Other features of the scheme confirm that the phrase "extraordinary and compelling reasons" does not encompass changes in law.

Most notably, in the very next paragraph of Section 3582(c), Congress expressly addressed the retroactive application of some changes in law. In Section 3582(c)(2), Congress authorized courts to modify a term of imprisonment where a defendant was sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2); *see* 28 U.S.C. § 994(u) (directing the Commission to determine when such modifications are appropriate). There would have been no reason for "the same Congress, skeptical of sentence modifications as a general rule," to have "provide[d] for the retroactive application of specific changes in sentencing law in § 3582(c)(2)" had Section 3582(c)(1)(A)(i)

15

"already covered all legal developments, retroactive or not." *McCall*, 56 F.4th at 1056. That Congress did not similarly provide the Commission or district courts with authority to revisit sentences in light of statutory amendments or changes in decisional law suggests that Congress did not intend for Section 3582(c)(1)(A) to reach such changes.

Reducing sentences based on intervening changes in the law also would undermine congressional design more generally because a motion brought pursuant to 28 U.S.C. § 2255 is the "remedial vehicle" Congress "specifically designed for federal prisoners' collateral attacks on their sentences." *Jones v. Hendrix*, 599 U.S. 465, 473 (2023); *see Thacker*, 4 F.4th at 574. (explaining that Section 2255 provides the "principal path" that Congress has "established for federal prisoners to challenge their sentences" after they have become final). Treating a nonretroactive change in the law as an "extraordinary and compelling" reason for a sentence reduction would allow defendants to "avoid the restrictions of the post-conviction relief statute by resorting to a request for compassionate release instead." *Crandall*, 25 F.4th at 586. It "would wholly frustrate explicit congressional intent to hold that [defendants] could evade" those restrictions "by the simple expedient of putting a different label on their pleadings." *Preiser v. Rodriguez*, 411 U.S. 475, 489-90 (1973). Congress surely "knew of its specific statutory scheme authorizing post-conviction relief" both "when it [enacted Section 3582(c)(1)(A)] in 1984 and amended it in 2018," and had "Congress intended the compassionate-release statute to act as an exception to this post-conviction framework, it would have made that intent specific." *McCall*, 56 F.4th at 1057-58 (internal quotation marks omitted).

16

Recognizing intervening changes in law as extraordinary or compelling reasons for a sentence reduction under Section 3582(c)(1)(A)(i) also would undermine a primary purpose of the Sentencing Reform Act, in which that provision was enacted.

Through the Act, Congress sought to eliminate the "'unjustifi[ed]' and 'shameful' consequences" of a sentencing regime that produced "great variation among sentences imposed by different judges upon similarly situated offenders" and "uncertainty as to the time [an] offender would spend in prison." *Mistretta*, 488 U.S. at 366 (quoting S. Rep. No. 98-225, at 38, 65 (1983) (Senate Report)); *see also Neal*, 516 U.S. at 290-91 ("The Commission was born of congressional disenchantment with the vagaries of federal sentencing and of the parole system"). The practices of federal courts and the Parole Commission left "each judge . . . to apply his own notions of the purposes of sentencing," resulting in an "astounding" and "inevitable disparity" in sentencing that was "not justified by differences among offenses or offenders" and was "unfair both to offenders and to the public." Senate Report at 38, 41, 45. "A primary goal" of the Act was "the elimination of unwarranted sentencing disparity." Senate Report at 52. In "overhaul[ing] federal sentencing practices" by "abandon[ing] indeterminate sentencing and parole," Congress sought to "channel[ ] judges' discretion by establishing a framework to govern their consideration and imposition of sentence." *Tapia*, 564 U.S. at 325.

Consistent with Congress's goal of determinate sentencing, Section 3582(c)(1)(A) was enacted as a narrow "safety valve" for "unusual cases in which an eventual reduction in the length of a term of imprisonment is justified by changed circumstances." Senate Report at 55, 121. Congress anticipated that such "justification[s] for reducing a term of imprisonment" would arise in a "relatively small number" of cases, and specifically identified severe or terminal illness as

17

the archetype of "extraordinary and compelling circumstances" that would justify reducing a sentence. *Id.* at 55-56, 121.

Subsection (b)(6), however, purports to allow a district court to reduce a defendant's sentence when, in the judge's estimation, the defendant received "an unusually long sentence" that, accounting for nonretroactive changes in law, now represents a "gross disparity" from the sentence the court would likely impose today. U.S.S.G. § 1B1.13(b)(6). That authority is incompatible with the Sentencing Reform Act's overarching purpose and Congress's specific intent with respect to Section 3582(c)(1)(A), and it effectively reproduces the indeterminate system the Act sought to eliminate, in which judges applied their own varied "notions of the purposes of sentencing." Senate Report at 38. Individual judges inevitably will have divergent views concerning the fairness of adhering to the ordinary practice of applying a change in law prospectively, whether a sentence lawfully imposed under the prior regime is "unusually long," and whether Congress's or the courts' assessment not to apply a change in law retroactively produces a "gross disparity," and what a "gross disparity" looks like. It is doubtful the Sentencing Reform Act "contained the[ ] seeds of its own destruction," *Jenkins*, 50 F.4th at 1202, and there is no basis to think that, notwithstanding the Act's express purpose to eliminate parole in favor of determinative sentencing, Congress nevertheless created such "a freewheeling opportunity for resentencing based on prospective changes in sentencing policy or philosophy," *Crandall*, 25 F.4th at 586.

The Sentencing Commission's explanation for the amendment cites a single sentence from the Senate Report to support its conclusion that Section 3582(c)(1)(A)(i) allows courts to reduce "unusually long sentences." *See* 88 Fed. Reg. at 28,258. In the relevant passage, the

18

Senate Judiciary Committee expressed its belief that the "unusual cases in which an eventual reduction in the length of a term of imprisonment" would be "justified by changed circumstances" might include "cases of severe illness" or "cases in which other extraordinary and compelling circumstances justify a reduction of an unusually long sentence."  Senate Report at 55.  The Commission takes that line—which is ambiguous at best—out of context and elevates that single sentence above the Act's plain text and overarching purpose.  In context, the passage suggests only that Congress anticipated that the sort of "changed circumstances" that might warrant a sentence reduction would most often emerge during the duration of an "unusually long" period of incarceration—during which a prisoner might become elderly or infirm, for example.  *Id.* Indeed, the passage makes clear that to justify even the reduction of an unusually long sentence Congress understood Section 3582(c)(1)(A) to require the identification of particular "extraordinary and compelling circumstances."  *Id.*  The passage does not suggest that Section 3582(c)(1)(A) provides authority to reduce any sentence a court subsequently comes to view, in hindsight, as "unusually long."

The Commission also invokes the First Step Act of 2018's stated intent to increase the use of sentence reduction motions.  *See* 88 Fed. Reg. at 28,256; § 603(b), 132 Stat. 5239.  But nothing about the First Step Act's procedural amendment to Section 3582(c)(1)(A) or Congress's expectation that the amendment would lead to greater use of the provision "suggests Congress intended to change th[e] *substantive* status quo with a process-oriented amendment."  *McCall*, 56 F.4th at 1060 (emphasis added).  Congress's effort to allow defendants to file sentence-reduction motions directly sought to remedy perceived deficiencies in the BOP's preexisting procedures, which prevented the BOP from bringing Section 3582(c)(1)(A) motions on behalf of some

defendants who satisfied longstanding criteria for relief.[6]  Congress, however, did not amend the statutory requirement that reasons for a sentence reduction be extraordinary and compelling. Tellingly, the amendment explicitly conditioned a defendant's filing on a requirement that he first "exhaust[ ]" with BOP a request that BOP "bring a motion on the defendant's behalf."  18 U.S.C. § 3582(c)(1)(A).  Congress could not have expected BOP to evaluate whether an intervening change in law warranted a defendant's early release from custody; indeed, BOP typically plays no role in "determining the lawfulness of individual sentences," "calculating guideline ranges," or assessing the possible disparity produced by a defendant's sentence.  *See Jenkins*, 50 F.4th at 1205-06.  In short, nothing about the First Step Act's procedural amendment "indicates any intention on Congress's part" to "fundamentally change the nature of compassionate release." 4/5/23 Tr. 64-66 (Vice Chair Murray, delivering joint statement); *cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress . . . does not, one might say, hide elephants in mouseholes.").

Finally, the Commission's interpretation of Section 3582(c)(1)(A) as empowering district courts to apply nonretroactive changes in law to particular defendants is in serious tension with basic separation-of-powers principles.

In upholding the Sentencing Commission's constitutionality, the Supreme Court observed that the Commission is not vested with "the legislative responsibility for establishing minimum and maximum penalties for every crime."  *Mistretta*, 488 U.S. at 396.  "Congress

---

[6] *See* Sentencing Guidelines App. C, Amend. 799 (noting evidence showing "inefficiencies that exist within the Bureau of Prisons' administrative review of compassionate release applications, which can delay or deny release, even in cases where the applicant appears to meet the criteria for eligibility"); U.S. Dep't of Justice, Office of the Inspector Gen., *The Federal Bureau of Prisons' Compassionate Release Program* 53 (2013) (finding that the "inconsistent and ad hoc implementation" of BOP's "compassionate release program" has "likely resulted in potentially eligible inmates not being considered for release").

20

generally cannot delegate its legislative power to another Branch," *id.* at 372, and "[w]hatever views may be entertained regarding severity of punishment, . . . these are peculiarly questions of legislative policy," *Gore v. United States*, 357 U.S. 386, 393 (1958). The Commission does not pose a nondelegation or separation-of-powers concern, the Court held, precisely because Congress delegated to the Commission "nonadjudicatory functions that do not trench upon the prerogatives of another Branch." *Mistretta*, 488 U.S. at 388. Subsection (b)(6) contravenes those limits by purporting to empower courts to ignore Congress's retroactivity determinations on a case-by-case basis.

The separation-of-powers concern is particularly apparent when one considers the Commission's directive regarding *its own* retroactivity determinations. Section 3582(c)(2) permits a defendant "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission" to move for a sentence reduction "consistent with applicable policy statements issued by the Sentencing Commission," and Sentencing Guidelines § 1B1.10 identifies particular Guidelines amendments that the Commission has elected to make retroactive. *See* U.S.S.G. § 1B1.10(a), (d). In subsection (b)(6), the Commission expressly excluded "an amendment to the Guidelines Manual that has not been made retroactive" from qualifying as an extraordinary and compelling reason for a sentence reduction. U.S.S.G. § 1B1.13(b)(6); *see* 88 Fed. Reg. at 28,259. The Commission accordingly precluded courts from using compassionate release as an end-run around the Commission's own determinations concerning the retroactive application of its Guidelines amendments. But by permitting other changes in law, including a statutory change that *Congress* explicitly declined to make retroactive, to qualify, the Commission declined to afford the same respect to Congress's

21

retroactivity determinations. That counterintuitive result cannot be squared with the Commission's statutory authority. *See, e.g.*, *LaBonte*, 520 U.S. at 757 (the Commission "must bow to the specific directives of Congress").

### 3. <u>The Remaining Reasons Offered By Defendant Are Not Extraordinary And Compelling</u>

Here, defendant makes the same arguments from previous motions, that his rehabilitation efforts, in conjunction with other factors, are extraordinary. Some of those other factors are that the Guidelines are no longer mandatory, per *Booker,* changes in the law regarding drug weight (*Apprendi*) , age at the time of the offense, Covid-19 issues, and that a drug conspiracy is a lesser included offense of a continuing criminal enterprise (CCE). None of these changes are dispositive for Mr. Wyrick. The most seemingly important issue would be the conviction for conspiracy and CCE, however Mr. Wyrick was convicted of conspiracy AND engaging in a continuing criminal enterprise *causing the intentional killing of an individual.* (emphasis added). Conspiracy is not a lesser include offense of CCE causing the intentional killing of an individual. All other issues have been discussed and briefed in the other 3 prior motions (Doc. 1098, 1112, and 1125.)

### 4. <u>Defendant Remains a Danger to the Community and Section 3553(a) Factors Do Not Support Release</u>

This Court may not modify or reduce the defendant's sentence without considering the 18 U.S.C. § 3553(a) factors, including the nature and circumstances of the offense and history and characteristics of the defendant; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct;  to protect the public from future crimes of the defendant; and to provide the

22

defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.[7]  18 U.S.C. § 3582(c); *see also United States v. Jones*, 2020 WL 6817488, at *11 (6th Cir. Nov. 20, 2020) (citing *Gall v. United States*, 552 U.S. 38 (2007) ("District courts should consider all relevant § 3553(a) factors before rendering a compassionate release decision.").  Consideration of these factors, which are not affected by COVID-19, does not allow the Court to grant the defendant's motion for compassionate release. This defendant is a danger to the community and should not be considered for compassionate release.

Further, U.S.S.G. § 1B1.13 directs Courts to also consider the factors outlined in 18 U.S.C. § 3142(g) in order to determine whether the defendant remains a danger to the community. Under 18 U.S.C. § 3142(g), the Court must consider four factors in determining whether the defendant might present a danger:  (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)– (4). Consideration of these factors—which are not affected by COVID-19—does not allow this Court to conclude that this defendant is not a danger to the safety of any other person or the community.

---

[7] U.S.S.G. § 1B1.13(2), states that even if a prisoner demonstrates "extraordinary and compelling reasons," he is not entitled to compassionate release if he poses "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." As discussed above, Courts are divided as to whether § 1B1.13 applies outside the context of a motion filed by the BOP. However, § 3582 unquestionably requires the Court to consider the § 3553(a) factors, which encompasses the arguments the Government has raised with regard to the defendant's presentation of a danger to the community and the need to protect the public.

(1)     nature and circumstances of the charges offense, § 3142(g)(1).

This defendant was convicted of conspiracy to distribute more than 1000 kilograms of marijuana and continuing criminal enterprise resulting in death after a six-week trial.  The PSR shows that defendant was reportedly a light heavyweight professional boxer and sold small quantities of marijuana, however his main function was an enforcer and intimidator for the conspirators.  He had been involved in the assault of someone who stole drugs from the main defendant and on June 27, 1989, shot and killed Elmont Kerns at the direction of Dennis Moore, Sr., the main co-defendant charged in the case and only defendant who went to trial with defendant Wyrick.

(2)     weight of the evidence, § 3142(g)(2).

After a six-week trial, a jury found both men guilty and Wyrick was sentenced to life imprisonment for his role in the conspiracy and in the death of Elmont Kerns.

(3)     defendant's history and characteristics, § 3142(g)(3).

The defendant's criminal history, as shown in the PSR, indicates he had two municipal convictions for DUI and disorderly conduct and one felony conviction for unlawful use of a weapon.  He was in the United States Marine Corp (honorable discharge) and was both an amateur and a professional boxer.

Again, this defendant has failed to demonstrate that the § 3553(a) factors the Court considered at the time of sentencing have changed, therefore the Court should deny the defendant's motion for immediate release.  There has been no change in circumstances from the time this court ordered his last compassionate release denied to this request.

24

**5.** <u>**Record of Rehabilitation is Not an Extraordinary and Compelling Reason**</u>

Finally, the defendant asserts he has demonstrated a record of rehabilitation, and the Government does not dispute that the accomplishments the defendant has made in prison, as listed and documented in all his pro se motions (D.E. 1104, 1110, 1122, 1133), are laudable. However, rehabilitation of a defendant is not, by itself, an extraordinary and compelling reason for a reduction of a term of imprisonment, although it may be considered.

If the court is so inclined, they could grant the evidentiary hearing requested by defendant, although it is not needed to make a reasoned determination based on the merits. The record is clear and has not changed since the last pro se request for compassionate release was made. The government is also certain that defendants' efforts since being incarcerated, have been duly noted by this court.

<u>**CONCLUSION**</u>

Based on the foregoing, the Government respectfully requests that the defendant's renewed motion for compassionate release be denied.

Teresa A. Moore
United States Attorney

By    */s/ Joseph M. Marquez*

Joseph M. Marquez #40634
Assistant United States Attorney

Charles Evans Whittaker Courthouse
400 East 9th Street, Fifth Floor Kansas
City, Missouri 64106 Telephone: (816)
426-3122

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was delivered on January 31, 2024, to the CM-ECF system of the United States District Court for the Western District of Missouri for electronic delivery to all counsel of record and USPS Certified Return/Receipt to the defendant at:

> Keven Wyrick
> Reg. No. 08724-045
> Englewood Federal Corrections Institution
> Inmate Mail/Parcels
> 9595 West Quincy Avenue
> Littleton, CO 80123

> */s/ Joseph M. Marquez*
> Joseph M. Marquez
> Assistant United States Attorney

26